757 F.2d 796
 6 Employee Benefits Ca 1420
 Emery AUTHIER, Jr., Plaintiff-Appellee,
v.
Fred M. GINSBERG, American Steel Corporation, a Michigan
corporation and National Steel Corporation, a
foreign corporation, jointly and
severally, Defendants-Appellants.
 No. 83-1674.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 29, 1984.
Decided March 26, 1985.
 
 Douglas H. West (argued), Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., Charles Weiss, Chester R. Babst, III, Thorp, Reed & Armstrong, Kevin Abbott, Joseph Mack III, Pittsburgh, Pa., for defendants-appellants.
 William J. Weinstein (argued), Weinstein, Kroll & Gordon, Marc Shulman, Southfield, Mich., for plaintiff-appellee.
 Before EDWARDS* and MARTIN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 CELEBREZZE, Senior Circuit Judge.
 
 
 1
 Defendants-appellants, National Steel Corporation (National), its wholly owned subsidiary, American Steel Corporation (American), and Fred Ginsberg, American's Chairman, appealed from a jury verdict in favor of Plaintiff-Appellant, Emery Authier, Jr. The defendants contend that the district court submitted improperly the case to the jury because Authier's complaint failed to state a cause of action under Michigan law and because, in any event, the action was preempted by Section 514(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1001-1461 (1982). We hold that although Authier stated a cause of action under Michigan law, such an action is preempted by ERISA. Accordingly, we vacate the jury verdict.
 
 
 2
 Authier was employed as an accountant by American from November of 1968 until his discharge in November of 1980. In January 1978, Authier was appointed as an administrator of American's profit sharing plan, along with George Angevine, National's General Counsel, and Bill Rust, National's Vice President-Finance. Since American's profit sharing plan was subject to ERISA regulation, see 29 U.S.C. Sec. 1003(a) (1982), Authier and the other administrators become subject to ERISA's fiduciary duties, see 29 U.S.C. Sec. 1104 (1982).
 
 
 3
 In the fall of 1979, a corporate decision was made to terminate American's profit sharing plan and bring the participants within National's pension plan. During the termination process, Authier spoke to a partner in the law firm in charge of the termination of the plan. The partner informed Authier that an associate believed that a few problems existed with the plan. The next day Authier contacted the associate who denied making the statements attributed to him and assured Authier that nothing was wrong with the plan. Authier then contacted the firm which originally drafted the profit sharing plan; a partner at the firm told Authier that the termination should occur without difficulty.
 
 
 4
 Believing he was obligated by ERISA to inform his co-fiduciaries and the plan's participants of potential problems, Authier drafted a letter in which he related his concerns. The letter recommended, among other things, that the law firm which drafted the pension plan be placed in charge of its termination. This letter was sent to Rust, Angevine, and the plan's participants. Subsequently, according to the defendants, since Authier had been instructed previously to clear all mail of a non-routine nature with Ginsberg and since he failed to obtain Ginsberg's approval prior to sending the letter, Authier was discharged from his positions at American. Authier then brought suit, arguing that his discharge contravened Michigan public policy.
 
 
 5
 Generally, under Michigan law, an employee can be discharged for any reason. E.g., Lynas v. Maxwell Farms, 279 Mich. 684, 687, 273 N.W. 315, 316 (1937). The Michigan courts, however, recognize an exception to this general rule; an employee may not be discharged in violation of a "clearly articulated, well-accepted public policy." Clifford v. Cactus Drilling Corp., 419 Mich. 356, 367, 353 N.W.2d 469, 474 (1984). In order to invoke this public policy exception, a plaintiff must establish that he was engaged in a protected activity, that he was discharged, and that his discharge was due to performing the protected activity. Id. at 367, 353 N.W.2d at 474. In this case, the jury found specifically that Authier was discharged for fulfilling his duties under ERISA. Thus, as an initial matter, the issue before this court is whether a fiduciary's compliance with his duties under ERISA is a protected activity.
 
 
 6
 The Michigan Supreme Court has noted that an employee's compliance with a statutory directive may, under certain circumstances, be a protected activity. Clifford, 419 Mich. at 365, 353 N.W.2d at 473. For example, in Trombetta v. Detroit, Toledo & Ironton Railroad Co., 81 Mich.App. 489, 265 N.W.2d 385 (1978), the Michigan Court of Appeals held that an employer could not, consistent with public policy, discharge an employee for refusing to falsify state required pollution control reports.[1] The Trombetta court reasoned that "[i]t is without question that the public policy of this state does not condone attempts to violate its duly enacted laws." Id. at 495, 265 N.W.2d at 388. Accord Goins v. Ford Motor Co., 131 Mich.App. 185, 347 N.W.2d 184 (1983) (Michigan public policy violated by firing an employee for filing a worker's compensation report). In addition to an employee's compliance with the statutory mandate, however, the statutory scheme must create a clearly-mandated public policy.[2] E.g., Suchodolski v. Michigan Consolidated Gas Co., 412 Mich. 692, 696, 316 N.W.2d 710, 712 (1982) (per curiam).
 
 
 7
 In order to protect pension plan participants and beneficiaries, Congress set up a comprehensive statutory scheme which established "standards of conduct, responsibility, and obligation for fiduciaries." 29 U.S.C. Sec. 1001(b) (1982). An ERISA fiduciary is obligated to perform his duties with the "skill, prudence, and diligence" of a reasonable man and act "solely in the interest of the participants and beneficiaries." 29 U.S.C. Sec. 1104(a)(1)(B) (1982). Moreover, fiduciaries are personally liable for breaches of their duties under ERISA, 29 U.S.C. Sec. 1109(a) (1982), and, under some circumstances, for breaches by their co-fiduciaries, 29 U.S.C. Sec. 1105 (1982). We believe that this explicit Congressional policy statement coupled with ERISA's detailed statutory provisions rises to the level of an important and clearly-articulated public policy under Michigan law.[3] Thus, the district court held correctly that Authier asserted a cause of action under Michigan law, and, consequently, appropriately considered whether the action was preempted by ERISA.
 
 
 8
 ERISA preempts expressly "any and all State laws[4] insofar as they may now or hereafter relate to any employee benefit plan."[5] 29 U.S.C. Sec. 1144(a) (1982) (emphasis added). The Supreme Court has on two occasions considered the breadth of preemption under ERISA. In Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the Court interpreted Section 1144(a) broadly to preempt state laws which relate both directly and indirectly to ERISA. Id. at 525, 101 S.Ct. at 1907. Thus, the Court held that even though the New Jersey law in question regulated apparently workers' compensation awards and not pension plans, it still fell within the preemptive sphere of Section 1144(a). Id. at 524, 101 S.Ct. at 1906. Further, the Court noted that Congress intended to make the regulation of pension plans solely a federal concern. Id. at 523, 101 S.Ct. at 1906. More recently, the Supreme Court reaffirmed and expanded upon the Alessi holding. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Court in Shaw reasoned that Congress used "relate to" in its broadest sense, id. at ----, 103 S.Ct. at 2900, and, therefore, if a state law has "a connection with or reference to" an ERISA pension plan, it is preempted, id.[6] In the present case, we must determine whether a state common-law cause of action for discharge in violation of public policy based on a fiduciary's alleged compliance with ERISA has a connection with or reference to an employee benefit plan.[7]
 
 
 9
 Although Authier's claim is predicated technically upon the Michigan common-law cause of action for discharge in contravention of public policy, we believe that, as applied in this case, the action relates to an ERISA pension plan. Authier's action hinges upon his assertion that he was terminated for fulfilling his obligations under ERISA. More importantly, ERISA created the public policy element of the commonlaw action. In our view, even though the Michigan cause of action regulates ostensibly employment relationships and not pension plans, preemption is not precluded in this specific application. See Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 524, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1983). The Supreme Court has noted explicitly that the crucial inquiry is not the purpose of the action; rather, its relation to an ERISA pension plan is determinative. Id. Thus, we conclude that since ERISA created a substantive element of the Michigan action and since the action turns upon a fiduciary's duties under ERISA, Authier's cause of action is related to ERISA within the meaning of Section 1144(a) and, accordingly, is expressly preempted.[8]
 
 
 10
 This result is consistent with Congress' intent in enacting ERISA to protect beneficiaries and participants "by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. Sec. 1001(b) (1982) (emphasis added). Broad enforcement provisions effectuate this policy. Civil actions may be brought by any "participant, beneficiary, or fiduciary ... to enjoin any act or practice which violates any provision of [ERISA]," 29 U.S.C. Sec. 1132(a) (1982) (emphasis added), and by a participant or beneficiary whose rights under ERISA are interfered with, 29 U.S.C. Sec. 1140 (1982);[9] see Crouch v. Mo-Kan Iron Workers Welfare Fund, 740 F.2d 805, 810 (10th Cir.1984) (Section 1140 creates a retaliatory action similar to the civil rights laws); Kross v. Western Electric Co., Inc., 701 F.2d 1238, 1241-43 (7th Cir.1983) (Section 1140 to be liberally construed); West v. Butler, 621 F.2d 240, 243-44 (6th Cir.1980) (Section 1140 "may be enforced by civil actions"). Similarly, criminal sanctions are available for coercive interference with a beneficiary's or participant's rights, 29 U.S.C. Sec. 1141 (1982); see West v. Butler, 621 F.2d 240, 243-44 (6th Cir.1980) (enforcement of Section 1141 exclusive province of the Attorney General), and for willful violations of the reporting and disclosure provisions, 29 U.S.C. Sec. 1131 (1982). Moreover, the Secretary of Labor is given express investigative and enforcement powers. 29 U.S.C. Secs. 1132(a)(2) & 1134 (1982). Such a comprehensive enforcement scheme is indicative of a Congressional intent to make enforcement of ERISA solely a federal concern. See Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, ----, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983) (ERISA provides a "series of express causes of action in favor of participants, beneficiaries and fiduciaries"); Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1215 (8th Cir.) (Congress intended to provide uniform remedies in the enforcement of ERISA), cert. denied, 454 U.S. 968, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981); Ogden v. Michigan Bell Telephone Co., 571 F.Supp. 520, 523 (E.D.Mich.1983) (following Dependahl ); Gordon v. Matthew Bender & Co., 562 F.Supp. 1286, 1293-94 (N.D.Ill.1983) (court accepts expansive view of ERISA).
 
 
 11
 The legislative history also supports this conclusion. Both the Senate and House Reports, in the sections considering the enforcement provisions of ERISA, indicate that Congress intended "to provide the full range of legal and equitable remedies." H.R.Rep. No. 93-533, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4655; S.Rep. No. 93-127, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4838, 4871. Further, both reports stress the broad preemption of state laws to provide a uniform source of law. H.R.Rep. No. 93-533, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4655; S.Rep. No. 93-127, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4838, 4871.
 
 
 12
 Allowing a fiduciary to bring a state law cause of action for retaliatory discharge, as in the present case, will create inconsistency in the enforcement of ERISA. Initially, since all states do not recognize such an action,[10] the recourse for a terminated ERISA fiduciary will depend upon the fortuity of the location of his employment. Moreover, even in the states which do recognize an action in a fiduciary's favor, the state courts will have to define both the scope of a fiduciary's duties under ERISA and the available remedies. Clearly, allowing the remedies available to an ERISA fiduciary discharged for complying with ERISA to turn upon the state of his employment and a state court's interpretation of ERISA's provisions runs contrary to Congress' desire to establish a uniform federal law regulating pension plans. E.g., Shaw v. Delta Air Lines, Inc., 463 U.S. 85, ----, 103 S.Ct. 2890, 2904, 77 L.Ed.2d 490 (1983); Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). Thus, we conclude that permitting a fiduciary to bring a state law cause of action for discharge in violation of public policy would thwart the purpose of Congress in enacting ERISA. E.g., Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956); Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Accordingly, Authier's action is preempted.[11]
 
 
 13
 In summary, we conclude that, as applied in this case, the Michigan common-law cause of action for discharge in violation of public policy relates to ERISA and, therefore, is expressly preempted. Since permitting a fiduciary to bring this type of action would create a diversity in the enforcement of ERISA, we believe that it is contrary to Congress' desire to create a uniform federal law governing the enforcement of ERISA. The jury verdict is, accordingly, vacated and the case remanded with instructions to dismiss appellee's complaint.
 
 
 14
 Both sides shall bear their own costs of this appeal.
 
 
 15
 GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 16
 This appeal poses many problems but I am not persuaded that the jury award should be vacated. Plaintiff pled and presented evidence to support a claim that he was wrongfully discharged for seeking to uphold his fiduciary duties under ERISA. In my opinion, plaintiff stated a cause of action under Michigan law for wrongful discharge in violation of public policy. The following cases illustrate Michigan's stated policy in this regard. I recognize that it has been more often stated in dicta than illustrated in judgments. Nonetheless, the facts in this case as viewed by this jury fit the Michigan theory and I see no reason to doubt that Michigan would protect the integrity of ERISA as part of its own public policy. See Suchodolski v. Michigan Consolidated Gas Co., 412 Mich. 692, 316 N.W.2d 710 (1982); Trombetta v. Detroit, Toledo & Ironton Railroad Co., 81 Mich.App. 489, 265 N.W.2d 385 (1978) and Sventko v. Kroger Co., 69 Mich.App. 644, 245 N.W.2d 151 (1976).
 
 
 17
 I should add that I do not think ERISA preempted the Michigan cause of action spelled out above. ERISA does not expressly create a federal cause of action for wrongful discharge of a fiduciary.
 
 
 18
 While, if I were not writing in dissent, I would give serious thought to defendants' remittitur motion, I do not join in vacation of the entire jury award.
 
 
 
 *
 Honorable George Edwards took senior status January 15, 1985
 
 
 [1]
 The Michigan Supreme Court has affirmed the holding of Trombetta. Clifford v. Cactus Drilling Corp., 419 Mich. 356, 365, 353 N.W.2d 469, 473 (1984)
 
 
 [2]
 We note that the Michigan courts have not yet applied the retaliatory discharge exception to violations of federal public policy. Nevertheless, in Suchodolski v. Michigan Consol. Gas Co., 412 Mich. 692, 316 N.W.2d 710 (1982) (per curiam), the Michigan Supreme Court cited approvingly a United States District Court case which held that a discharge for refusing to fix prices in violation of the Sherman Act violated Pennsylvania public policy, McNulty v. Borden, Inc., 474 F.Supp. 1111, 1119 (E.D.Pa.1979). Suchodolski, 412 Mich. at 695 n. 3, 316 N.W.2d at 712 n. 3. We do not believe that a principled distinction can be drawn between discharges in violation of a state public policy and those which contravene a public policy created by a federal statute. Thus, we conclude that the Michigan courts would recognize a cause of action for a discharge which violated an important and clearly-mandated federal public policy
 
 
 [3]
 Appellants have contended throughout these proceedings that this action concerns merely a corporate management dispute, which does not implicate Michigan public policy. See Suchodolski v. Michigan Consol. Gas. Co., 412 Mich. 692, 316 N.W.2d 710 (1982) (per curiam). In our view, since Congress has declared explicitly that the public policy of the United States is to establish "standards of conduct, responsibility, and obligation for fiduciaries," 29 U.S.C. Sec. 1001(b) (1982), and has enacted specific statutes to carry out this policy, Authier's discharge for complying allegedly with ERISA cannot be categorized as merely a corporate management dispute
 
 
 [4]
 "State law" is defined expansively to include "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. Sec. 1144(c)(1) (1982). Similarly, the term "State" subsumes "a State, any political subdivisions thereof, ... which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans." 29 U.S.C. Sec. 1144(c)(2) (1982) (emphasis added)
 Ostensibly, the language "terms and conditions" in Section 1144(c)(2) could be construed narrowly to limit the preemptive effect of Section 1144(a); only state laws which impinge upon the specific provisions of ERISA would be preempted. See Lane v. Goren, 743 F.2d 1337, 1340 (9th Cir.1984) (court indicates in dicta that terms and conditions language could be construed narrowly to limit preemptive effect of ERISA). This interpretation of Section 1144(c)(2), however, would be contrary to the legislative history of ERISA. Congress rejected explicitly a proposed preemption provision which reached only specific subjects covered by ERISA in favor of the current broad language of Section 1144(a). See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, ---- - ---- & nn. 18, 19 & 20, 103 S.Ct. 2890, 2900-01 & nn. 18, 19 & 20, 77 L.Ed.2d 490 (1983). Further, if Congress intended for Section 1144(a) to have a limited preemptive effect, there would have been no need to exempt from preemption state criminal laws of general applicability. See 29 U.S.C. Sec. 1144(b)(4) (1982). Nevertheless, because we believe that a state law which governs the remedies available to an ERISA fiduciary discharged for complying with ERISA regulates, even under a narrow interpretation, the "terms and conditions" of a pension plan, we need not decide what limiting effect, if any, should be given to this phrase.
 
 
 [5]
 This "virtually unique" preemption provision was intended to create a body of federal substantive law regulating pension plans. Franchise Tax Bd. of the State of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, ---- n. 26, 103 S.Ct. 2841, 2854 n. 26, 77 L.Ed.2d 420 (1983)
 
 
 [6]
 The Supreme Court in Shaw recognized that some state actions may be "too tenuous, remote, or peripheral" to warrant preemption. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, ---- n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). The Court cited, without explicitly approving, American Tel. & Tel. Co. v. Merry, 592 F.2d 118 (2d Cir.1979). In Merry, the Second Circuit held that an action to garnish a spouse's income to satisfy a support obligation was not preempted by ERISA. The court noted that the garnishment action dealt with the " 'ancient family law right of maintenance,' " id. at 122 (quoting Cartledge v. Miller, 457 F.Supp. 1146, 1154 (S.D.N.Y.1978) ), and that the regulation of domestic affairs has long been the province of state courts, Merry, 592 F.2d at 122. Hence, the court reasoned that Congress did not intend to preempt this area. Accord Savings & Profit Sharing Fund of Sears Employees v. Gago, 717 F.2d 1038, 1040 (7th Cir.1983); Bowen v. Bowen, 715 F.2d 559, 560 (11th Cir.1983) (per curiam); Operating Engineers' Local # 428 Pension Trust Fund v. Zamborsky, 650 F.2d 196, 198-99 (9th Cir.1981). The Second Circuit, however, has emphasized the narrowness of the remote and peripheral exception. E.g., Stone & Webster Eng'g Corp. v. Ilsley, 690 F.2d 323, 329 (2d Cir.1982), aff'd, --- U.S. ----, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983)
 In contrast, a cause of action for discharge in violation of public policy is not recognized in every state, see infra note 10, and employer-employee relations have not been solely a concern of the states, e.g., 29 U.S.C. Sec. 141-187 (1982) (Labor Management Relations Act); 29 U.S.C. Secs. 201-219 (1982) (Fair Labor Standards Act); 29 U.S.C. Secs. 651-678 (1982) (Occupational Safety and Health Act). Also unlike Merry which involved a basic state police power, i.e., the state control of domestic relations, this appeal concerns the remedies available to a trustee of an ERISA pension plan who is terminated for performing his duties under ERISA. Therefore, in our view, this case does not fall within the peripheral and remote exception.
 
 
 [7]
 The district court, without having the benefit of the Supreme Court's decision in Shaw, interpreted Alessi as addressing only "the specific issue before it." After the Court's decision in Shaw, the district court's narrow interpretation of Alessi is untenable
 
 
 [8]
 The breadth of the premptive effect of Section 1144(a) is evidenced by the exemption for criminal laws of general applicability, 29 U.S.C. Sec. 1144(b)(4) (1982), and by Congress' refusal to enact a proposed preemption statute which preempted only specific subjects, Shaw v. Delta Air Lines, Inc., 463 U.S. 85, ---- - ---- & nn. 18, 19 & 20, 103 S.Ct. 2890, 2900-01 & nn. 18, 19 & 20, 77 L.Ed.2d 490 (1983). See also Champion Int'l Corp. v. Brown, 731 F.2d 1406, 1409 (9th Cir.1984) (broad preemption to prevent conflicting and inconsistent state regulation); American Progressive Life & Health Ins. Co. of New York v. Corcoran, 715 F.2d 784, 786 (2d Cir.1983) (sweeping preemptive effect); Hotel & Restaurant Employees & Bartenders Int'l Union Local 54 v. Danziger, 709 F.2d 815, 830 (3rd Cir.1983) (preemption as broad as "relate to" language), vacated on other grounds, --- U.S. ----, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984); Stone & Webster Eng'g Corp. v. Ilsley, 690 F.2d 323, 329 (2d Cir.1982) (Section 1144(a) clearly eliminates the threat of conflicting or inconsistent state laws), aff'd, --- U.S. ----, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983); Kapuscinski v. Plan Adm'r (The Pension Plan-General Motors Corp. & the Int'l Union, UAW), 658 F.2d 427, 430 (6th Cir.1981) (discussing Alessi ); General Motors Corp. v. Buha, 623 F.2d 455, 459 (6th Cir.1980) (preemption central to ERISA); California Hosp. Ass'n v. Henning, 569 F.Supp. 1544, 1546-47 (C.D.Cal.1983) (most sweeping preemption statute ever enacted); Tolson v. Retirement Comm. of Briggs & Stratton Retirement Plan, 566 F.Supp. 1503, 1504 (E.D.Wis.1983) (discussing Shaw)
 
 
 [9]
 While Section 1132(a) provides that any "participant, beneficiary, or fiduciary " may bring an action to enforce ERISA, 29 U.S.C. Sec. 1132(a) (1982) (emphasis added), Section 1140 only provides civil actions for a "participant or beneficiary," 29 U.S.C. Sec. 1140 (1982). By including fiduciaries in Section 1132(a) but not in Section 1140, Congress may have intended to limit the remedies available to fiduciaries
 Nevertheless, assuming that Ginsberg was an ERISA fiduciary, see 29 U.S.C. Sec. 1002(21)(A) (1982) (person a fiduciary to the extent exercises control over a pension plan); Leigh v. Engle, 727 F.2d 113, 133-35 (7th Cir.1984) (corporate officer a fiduciary to the extent he controls selection or termination of fiduciaries); Shaw v. International Ass'n of Machinists & Aerospace Worker's Pension Plan, 563 F.Supp. 653, 657 (C.D.Cal.1983) (corporate officials fiduciaries to the extent they hire and fire trustees); Freund v. Marshall & Ilsley Bank, 485 F.Supp. 629, 640 (W.D.Wis.1979) (company officials fiduciaries to the extent they have discretionary authority); 29 C.F.R. Sec. 2509. 75-8(D-4) (1984), Authier may have been able to assert an action against Ginsberg under 29 U.S.C. Sec. 1109(a) (1984) (liability of fiduciary for breach of duty) for discharging him wrongfully. However, since this issue was not raised in the pleadings or in the parties' briefs, we do not address this question.
 
 
 [10]
 See generally Annot., 12 A.L.R. 4th 544, 555 (1982 & Supp.1984)
 
 
 [11]
 The district court held that a cause of action could not be implied from from ERISA in favor of fiduciaries discharged for fulfilling their statutory duties. Since the appellee failed to raise this issue on appeal, we make no determination as to the correctness of this holding