Ronald B. ANDREWS, Appellant,

v.

ALASKA OPERATING ENGINEERS–EMPLOYERS TRAINING TRUST FUND, Appellee.

No. S–5615.

Supreme Court of Alaska.

April 8, 1994.

Jeffrey A. Friedman, Friedman, Rubin & White, Anchorage, for appellant.

Bruce McKenzie, Donaldson, Kiel & McKenzie, P.S., Seattle, WA, and Russell Winner, Winner & Associates, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

*OPINION*

MOORE, Chief Justice.

*INTRODUCTION*

This case arises out of a dispute between the fiduciaries of an employee welfare benefit plan governed by the Employee Retirement Income Security Act (ERISA). Ronald Andrews was terminated from his position as administrative manager of the Alaska Operating Engineers–Employers Training Trust Fund (the Trust). He then filed suit alleging that he was discharged to prevent him from reporting possible misuse of trust funds by a trustee. In his complaint, he asserted that his termination violated the public policy of Alaska and constituted a breach of the covenant of good faith and fair dealing. The Trust responded by arguing that these claims were preempted by ERISA and were therefore subject to the exclusive jurisdiction of the federal courts. The trial court agreed with the Trust and dismissed Andrews' claims. We affirm.

*FACTS AND PROCEEDINGS*

The Alaska Operating Engineers–Employers Training Trust Fund is a collectively bargained, joint management/labor trust fund, subject to coverage under ERISA as an "employee welfare benefit plan." 29 U.S.C. §§ 1002(1), 1003(a) (1988). The purpose of the Trust is to provide job-related training to apprentices and journeymen represented by Local No. 302 of the International Union of Operating Engineers.

Beginning in 1986, Andrews was employed as administrative manager of the Trust. As administrative manager, Andrews had broad responsibilities, including recruiting and supervising apprentices and Trust employees, transferring money from the Trust's investment manager to the Trust's checking account and disbursing checks on behalf of the Trust.

In 1989 some of the trustees became concerned about Andrews' job performance. Andrews alleges that George Williams, the chairman of the Board of Trustees, convinced the other trustees not to fire him. In October 1989, Andrews approached James Gasper, the Trust's attorney, with questions about the propriety of Williams' travel expenses and reimbursement. The following day, Gasper informed Williams of Andrews' inquiry. Andrews alleges that shortly thereafter, Williams agreed that he should be fired. On October 31, Andrews was given notice of his immediate termination.

In March 1991 Andrews filed a complaint in the superior court based upon his termination. Count I of the complaint alleged that Andrews "was terminated in order to prevent him from giving information and testifying about the possible misuse of Trust funds" in violation of "the express public policy of the State of Alaska and the United States of America." Count II alleged that "[t]he Trust breached the covenant of good faith and fair dealing by firing plaintiff for reporting possible misuse of Trust funds."

The Trust filed a motion to dismiss for lack of subject matter jurisdiction, arguing that Andrews' claims were preempted by ERISA and subject to the exclusive jurisdiction of the federal district courts. After briefing

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

and oral argument, the superior court granted the Trust's motion as to all claims. This appeal followed.

*DISCUSSION*

### A. *Standard of Review*

■ The issue presented by this appeal is whether the superior court had subject matter jurisdiction over Andrews' claims. This is a question of law, subject to de novo review by this court. Under this standard, we will independently review the matter and adopt the rule that is most persuasive in light of precedent, policy, and reason. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

### B. *ERISA Preemption*

Section 514(a) of ERISA provides that "the provisions of this subchapter ... shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title...." 29 U.S.C. § 1144(a) (1988). Under the Act, the term "State law" refers to "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." *Id.* at § 1144(c).

The United States Supreme Court interpreted this provision in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In *Ingersoll–Rand,* the employee brought a wrongful discharge action under various state law contract and tort theories, alleging that the principal reason for his termination was his employer's desire to avoid contributing to his pension fund. *Id.* at 135–36, 111 S.Ct. at 481. The employer responded by claiming that the suit was preempted by ERISA.

Construing § 514(a) of the Act, the Court stated that " '[t]he pre-emption clause is conspicuous for its breadth.' ... Its 'deliberately expansive' language was 'designed to establish pension plan regulation as exclusively a federal concern.' " *Id.* at 138, 111 S.Ct. at 482 (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 408, 112 L.Ed.2d 356 (1990) and *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987)); *see also Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124, 1130 (9th Cir.1992) ("ERISA's preemption clause ... is to be read expansively."). The Court further noted that "[t]he key to § 514(a) is found in the words 'relate to.' "

> A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.... Under this "broad common-sense meaning," a state law may "relate to" a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.

*Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483 (citing *Shaw v. Delta Air Lines,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) and *Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1553).

Based upon this broad interpretation, the Court held that the employee's claim for wrongful discharge was preempted by ERISA. The Court noted that "the existence of a pension plan [was] a critical factor" in establishing the employer's liability under the state wrongful discharge law. *Id.* 498 U.S. at 139–40, 111 S.Ct. at 483. Thus, the Court concluded that the cause of action clearly "relate[d] to an ERISA-covered plan within the meaning of § 514(a)." *Id.* at 140, 111 S.Ct. at 483.

### C. *Preemption of Andrews' Public Policy Claim*

Andrews' complaint alleges that his "employment was terminated in order to prevent him from giving information and testifying about the possible misuse of Trust funds." The complaint further alleges that discharge on this basis "violate[s] the express public policy of the State of Alaska and the United States of America." Andrews argues that this claim is not preempted by ERISA since the claim does not require an interpretation of the underlying benefit plan, and that the public policy allegedly violated does not arise solely from ERISA.

Courts addressing ERISA preemption in this context have uniformly held that state

law retaliatory discharge and whistleblower claims based on alleged violations of public policy "relate to" ERISA plans and are thus preempted. For example, in *Hashimoto v. Bank of Hawaii*, 999 F.2d 408 (9th Cir.1993), the court addressed ERISA's preemptive effect on a state wrongful termination action alleging a violation of Hawaii's Whistle Blowers' Protection Act.[1] In *Hashimoto*, the employee complained to her superiors abut "potential and/or actual violations ... of the reporting and disclosure requirements and fiduciary standards of ERISA." 999 F.2d at 409. She contended that "but for her objections she would not have been discharged from employment." *Id.* at 410.

The United States Court of Appeals for the Ninth Circuit, citing *Ingersoll–Rand*, noted the considerable breadth of ERISA preemption. *Id.* at 410–11. The court stated:

> [A] trial of Hashimoto's claim would require an interpretation of the ERISA plans as to which she raised her objections about the Bank's fulfillment of its fiduciary obligations. Even though such examination by the court would only have to proceed to the point of determining Hashimoto's good faith, some interpretation of ERISA would probably be required.

*Id.* at 411. Based on this analysis, the court concluded that the claim was sufficiently "related to" an ERISA benefit plan to be preempted. *Id.* at 411–412.

Similarly, in *McLean v. Carlson Cos.*, 777 F.Supp. 1480 (D.Minn.1991), the employee claimed that she was discharged in retaliation for reporting to her superiors violations of ERISA in connection with the administration of an employee benefit plan. *Id.* at 1481. The court held the claim, which arose out of a state whistle blower statute, to be preempted. In concluding that the claim "related to" an ERISA plan, the court stated:

> To prove her claim [under state law], plaintiff must demonstrate that she reported

violations of law "in good faith." To the extent plaintiff reported violations of ERISA, plaintiff must describe the conduct she perceived to be violative of ERISA with reference to the ERISA provisions which the conduct purportedly contravened.... Plaintiff's claim refers to the plan and depends upon its existence. Further, to the extent it depends upon reported violations of ERISA, plaintiff's state law claim would provide a remedy for conduct arising, albeit indirectly, out of the administration of an ERISA plan.

*Id.* at 1483 (footnote omitted) (citing *Ingersoll–Rand*, 498 U.S. at 140, 111 S.Ct. at 483).

The court reached a similar conclusion in *Authier v. Ginsberg*, 757 F.2d 796 (6th Cir. 1985), *cert. denied*, 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985). In *Authier*, the co-administrator of an ERISA profit-sharing plan filed a state law claim for discharge in violation of public policy. *Id.* at 798. He alleged that he was terminated in retaliation for sending a letter to his co-administrators and the plan's participants expressing concerns regarding the implementation of proposed changes to the plan. *Id.* He argued that he was obligated under ERISA to inform his co-fiduciaries and the participants of the potential problems. *Id.*

The court held the claim preempted. *Id.* at 800. Although the court noted that the cause of action was "predicated technically upon the [state] common-law cause of action for discharge in contravention of public policy," it concluded that "as applied in this case, the action relates to an ERISA pension plan." *Id.* The court based its holding on the fact that ERISA created the public policy element at issue and that the action turned upon a fiduciary's duties under ERISA. *Id.*; *see also Maxfield v. Central States, Southeast & Southwest Areas Health, Welfare & Pension Funds*, 559 F.Supp. 158, 160–62 (N.D.Ill.1982) (holding a whistleblower claim

---

1. In *Hashimoto*, the employee did not expressly base her suit on an alleged violation of "public policy." However, Hawaii's Whistle Blowers' Protection Act may be viewed as a codification of the state's public policy against termination

based upon the reporting of a suspected violation of the law. Thus, *Hashimoto* and other whistle blower act cases are analogous to the instant case.

alleging violations of ERISA and the public policy of Illinois to be preempted by ERISA).

In addition to finding that state law causes of action in this context are "related to" ERISA plans for preemption purposes, the cases discussed above also relied upon the fact that ERISA provides a remedy for such claims. *See Hashimoto,* 999 F.2d at 411–12; *Tingey,* 953 F.2d at 1130–31; *Authier,* 757 F.2d at 801; *Maxfield,* 559 F.Supp. at 160. ERISA section 510 states, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter.... The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140 (1988). Section 502(a)(3) provides that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (1988).[2]

In *Hashimoto,* the court determined that §§ 502 and 510 of ERISA "may be fairly construed to protect a person in Hashimoto's position if, in fact, she was fired because she was protesting a violation of law in connection with an ERISA plan." 999 F.2d at 411. Based on this finding, the court held that, to the extent an ERISA violation was involved, the specific provisions of ERISA protecting whistle blowers preempted application of the state whistle blowers act. *Id.* at 412. The court further concluded that "[b]ecause the preemption is total, what appeared on its face to be a state cause of action is in fact a federal cause of action and must be recharacterized as such." *Id.*

Similarly, in *Maxfield,* the court concluded that the plaintiff's action for discharge in contravention of state public policy was preempted, "because 29 U.S.C. §§ 1132 and 1140 expressly provide a remedy for this wrong. ERISA's broad remedial policy coupled with its express preemption provisions indicate that Congress intended to occupy the field of employee benefit plans." 559 F.Supp. at 160; *see also Ingersoll–Rand,* 498 U.S. at 145, 111 S.Ct. at 486 (" 'When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected' by § 510 of ERISA, 'due regard for the federal enactment requires that state jurisdiction must yield.' ") (citation omitted); *Tingey,* 953 F.2d at 1130–31 ("ERISA preempts state law causes of action that offer remedies for the violation of rights expressly guaranteed by ERISA and exclusively enforced by ERISA's civil enforcement mechanism, § 502(a)."); *Felton v. Unisource Corp.,* 940 F.2d 503, 509 (9th Cir.1991) (quoting *Ingersoll–Rand* ).

In *Authier,* the court discussed the rationale behind the rule that state retaliatory discharge and whistle blower claims are preempted by the "comprehensive enforcement scheme" provided by ERISA. 757 F.2d at 801.

> Allowing a fiduciary to bring a state law cause of action for retaliatory discharge, as in the present case, will create inconsistency in the enforcement of ERISA. Initially, since all states do not recognize such an action, the recourse for a terminated ERISA fiduciary will depend upon the fortuity of the location of his employment. Moreover, even in the states which do recognize an action in a fiduciary's favor, the state courts will have to define both the scope of a fiduciary's duties under ERISA and the available remedies. Clearly, allowing the remedies available to an ERISA fiduciary discharged for complying with ERISA to turn upon the state of his employment and a state court's interpretation of ERISA's provisions runs

2. Section 502(e)(1) further provides that "the district courts of the United States shall have exclusive jurisdiction" over such actions. 29 U.S.C. § 1132(e)(1) (1988).

contrary to Congress' desire to establish a uniform federal law regulating pension plans.

*Id.* at 802 (footnote omitted).

■ Based on the above authorities, we conclude that Andrews' claim for wrongful discharge in contravention of the public policy of the State of Alaska is preempted by ERISA. Andrews' action clearly "relates to" an employee benefit plan under § 514 of ERISA. 29 U.S.C. § 1144(a) (1988). By alleging that he was fired "in order to prevent him from giving information and testifying about the possible misuse of Trust funds," Andrews expressly ties his claim to the existence of the Trust. Since it is undisputed that the Trust is governed by ERISA, Andrews' claim necessarily refers to and depends upon an ERISA benefit plan. *See McLean,* 777 F.Supp. at 1483. In addition, ERISA creates and codifies the public policy element of Andrews' action. *Authier,* 757 F.2d at 800; *see also Ingersoll–Rand,* 498 U.S. at 140, 111 S.Ct. at 483 (to prevail, plaintiff must establish that employer had pension-defeating motive in terminating her employment). A trial of Andrews' claim would require the interpretation of a fiduciary's obligations under ERISA.[3] *See Hashimoto,* 999 F.2d at 411; *Authier,* 757 F.2d at 800, 802; *McLean,* 777 F.Supp. at 1483. Finally, Andrews' claim would "provide a remedy for conduct arising, albeit indirectly, out of the administration of an ERISA plan." *McLean,* 777 F.Supp. at 1483.

In addition, ERISA provides the exclusive remedy for the wrong alleged by Andrews. As a fiduciary,[4] Andrews is authorized under § 502(a) to bring a civil action in federal district court to enforce ERISA's retaliatory discharge provision. *See* 29 U.S.C. §§ 1132, 1140 (1988).

Andrews' arguments that preemption is inappropriate with respect to his public policy claim are unpersuasive. He cites two Ninth Circuit cases which suggest that state law claims arising out of a plan's status as an employer are not subject to preemption. However, both cases are distinguishable from the instant situation.

In *General American Life Ins. Co. v. Castonguay,* 984 F.2d 1518, 1521 (9th Cir.1993), the court discussed ERISA preemption in terms of the "relationships" regulated by the statute. The court stated that "ERISA doesn't purport to regulate those relationships where a plan operates like any other commercial entity—for instance, the relationship between the plan and its own employees.... State law is allowed to govern these relationships, because it's much less likely to disrupt the ERISA scheme than in other situations." *Id.* at 1522.

In the present case, however, Andrews' claim does not arise from a relationship in which the Trust operates "like any other commercial entity." The claim is based on, and arises directly out of, alleged misuse of ERISA trust funds. As discussed above, a state cause of action such as this one would in fact implicate the duties and requirements of ERISA, and therefore raise the danger of disrupting the ERISA scheme.

Andrews also cites *Lane v. Goren,* 743 F.2d 1337 (9th Cir.1984), in support of his argument that ERISA does not preempt state claims arising out of a plan's status as employer. In *Lane,* the court held that a state employment discrimination claim against an ERISA benefit plan was not preempted. *Id.* at 1340. The court concluded that the state law claim applied to the plan "in its capacity as an employer, and in a way that all other employers are affected. It

---

3. The provisions governing fiduciary duties under ERISA are found at 29 U.S.C. §§ 1101–14 (1988).

4. Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) (1988), defines fiduciary as one who "(i) ... exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its as-

sets, ... or (iii) ... has any discretionary authority or discretionary responsibility in the administration of such plan." Under this broad definition, Andrews clearly qualifies as a fiduciary with respect to the Trust. *See Hashimoto,* 999 F.2d at 411 (agents of trustee are fiduciaries under § 1002(21)(A)).

simply cannot be said that state law which prohibits dismissal of an employee because of race 'relate[s] to,' 'has a connection with' or 'reference to' [sic] an employee benefit plan under these circumstances." *Id.*

*Lane* is also distinguishable from the instant case. Unlike Andrews' claim, the discrimination claim presented in *Lane* did not involve or require the interpretation of the fiduciary requirements of ERISA, nor was it suggested that ERISA itself provided a remedy for the discrimination alleged. In this case, however, the substance of Andrews' action is clearly remediable under §§ 502 and 510 of ERISA. Additionally, we find *Hashimoto* to be controlling in the present case. *Hashimoto* clearly contemplates the preemption of a state law wrongful discharge claim in the context presented here.

Andrews also cites a decision of this court in support of his argument. In *Alaska State Council of Carpenters v. United Brotherhood of Carpenters, Local 1281,* 727 P.2d 306 (Alaska 1986), we concluded that a state action relating to the selection of the trustees of an ERISA benefit plan was not preempted. In reaching this conclusion, we recognized that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' a plan." *Id.* at 309 (quoting *Shaw v. Delta Air Lines,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)). We also noted that "the state law at issue—contract law and the law governing the functioning of organizations—is traditionally a field left to the states." *Id.* at 310.

The analysis in *Carpenters* is inapplicable to the present case. In *Carpenters,* this court expressly stated that the fiduciary duties created by ERISA were not at issue. *Id.* We distinguished *Authier* on the grounds that that case "required an interpretation of the duties created by ERISA— clearly a federal matter." *Id.* The present case is distinguishable from *Carpenters* on the same grounds, since Andrews' claim of "misuse" of trust funds requires an interpretation of the uses permitted under ERISA. In addition, we further noted in *Carpenters* that "ERISA preempts state law wherever state law has an impact on the matters regulated by ERISA: disclosure, funding, reporting, vesting, and enforcement." *Id.* at 309. Clearly, Andrews' claim has an impact on the enforcement of rights protected by ERISA and should therefore be preempted.[5]

Based on the above analysis, we affirm the lower court's order dismissing Andrews' claim that his termination contravened the public policy of the State of Alaska. This claim is preempted by ERISA and is subject to the exclusive jurisdiction of the federal district courts.

### D. *Preemption of Andrews' Good Faith and Fair Dealing Claim*

Andrews' complaint also alleges that "[t]he Trust breached the covenant of good faith and fair dealing by firing plaintiff for reporting possible misuse of Trust funds." Andrews argues that even if his cause of action for violation of public policy is preempted by ERISA, the claim for breach of the covenant of good faith and fair dealing should not have been dismissed.

---

5. Andrews suggests that § 510 of ERISA is not implicated in this case, since his retaliatory discharge claim is based on an internal report, not a report to a public body. Andrews asserts that "ERISA does not provide a remedy" for such action. However, both *Hashimoto* and *McLean* clearly hold that discharge in retaliation for a report made internally is actionable under ERISA. In *Hashimoto,* the court held that § 510 of ERISA protects a person who is fired for complaining to her superiors about potential ERISA violations. The court, in reaching this conclusion, stated that "[t]he normal first step in giving information or testifying ... would be to present the problem first to the responsible man-

agers of the ERISA plan. If one is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: the anticipatory discharge discourages the whistle blower before the whistle is blown." *Hashimoto,* 999 F.2d at 410–11. *See also McLean,* 777 F.Supp. at 1484 ("[I]t would seem anomalous for the court to prohibit actions by plaintiffs who allege to have been discharged for reporting violations of ERISA to their employers while concurrently permitting actions by those who seek to remedy the same violations through legal action.").

In support of this argument, Andrews relies on cases which have held some claims to be preempted by ERISA, while allowing other state law claims to survive. For example, in *Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir.1987), the employee brought several state law actions against his employer, including wrongful discharge, breach of the implied covenant of good faith and fair dealing, conspiracy to interfere with protected property rights, and age discrimination. *Id.* at 798. These claims were based on several different theories. First, he alleged that his employer sought to prevent him from acquiring retirement benefits under an ERISA plan. *Id.* at 800. In the alternative, he alleged that he was fired without good cause. *Id.* At trial, the employer removed the case to federal district court, which granted summary judgment in favor of the employer. *Id.* at 798.

On appeal, the court affirmed in part and reversed in part. *Id.* Addressing ERISA preemption, the court noted that the employee had a federal claim under ERISA to enforce his right to the retirement benefits provided by the benefit plan. *Id.* at 800. Therefore, the court found that his state law claims were preempted "to the extent that [they] refer[red] to the employee benefit plan." The court further held that the claims for wrongful termination and breach of the implied covenant of good faith and fair dealing were not preempted to the extent they relied on "theories independent of the benefit plan." *Id.*

In *Tingey v. Pixley–Richards West, Inc.*, 953 F.2d 1124 (9th Cir.1992), a wrongful discharge case involving an alleged motive to interfere with ERISA-protected insurance benefits, the court stated that "ERISA preemption of an employee's action for wrongful termination, breach of employment contract, or the like turns on the employee's theory of why the termination occurred." *Id.* at 1131 (footnote omitted). Discussing ERISA's application to the employee's claims, the court concluded:

> [I]t might be argued that Tingey would have an action for breach of employment

contract with or without the existence of a benefit plan. Arguably, Tingey's contract cause of action does not "make specific reference to," nor is it "premised on," the existence of a benefits plan ... and therefore it should not be preempted. As will be shown, however, this argument fails. *So long as Tingey's underlying theory of the case revolves around the denial of benefits, his claim falls under ERISA's far-reaching preemption clause.*

*Id.* at 1131 n. 2 (emphasis added) (citing *Ingersoll–Rand*, 498 U.S. at 140, 111 S.Ct. at 483).

In the present case, the underlying theory supporting Andrews' claim for breach of good faith and fair dealing is that he was fired for reporting possible misuse of ERISA trust funds. For the same reasons discussed above regarding Andrews' public policy claim, this cause of action also "relates to" ERISA and is thus preempted. *See Tingey*, 953 F.2d at 1131 n. 2; *Sorosky*, 826 F.2d at 800 (claims preempted to the extent they rely on theories implicated by ERISA). Therefore, we affirm the trial court's dismissal of Andrews' second claim for lack of subject matter jurisdiction.

### CONCLUSION

Precedent clearly establishes that Andrews' causes of action for discharge in violation of public policy and for breach of the covenant of good faith and fair dealing are preempted by ERISA. The underlying theory supporting both of these claims is that Andrews was terminated for reporting possible misuse of an ERISA benefit plan's funds. As discussed in *Hashimoto* and other cases, these claims "relate to" an employee benefit plan and are remediable under ERISA's comprehensive regulatory scheme. Therefore, preemption is proper and complete. We therefore AFFIRM the trial court's order dismissing Andrews' state law claims for lack of subject matter jurisdiction.