STATE of Alaska, Appellant,

v.

Marie ARNARIAK, Appellee.

STATE of Alaska, Appellant,

v.

Adam ARNARIAK, Appellee.

Nos. A–5397, A–5398.

Court of Appeals of Alaska.

April 21, 1995.

Hearing Granted June 15, 1995.

Kevin M. Saxby, Asst. Atty. Gen., Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellant.

Frederick Torrisi, Dillingham, for appellee Marie Arnariak.

David B. Snyder, Asst. Public Defender, Dillingham, and John B. Salemi, Public Defender, Anchorage, for appellee Adam Arnariak.

Bruce Baltar, Dillingham, for Bristol Bay Native Ass'n and Togiak Traditional Council as amici curiae.

Before BRYNER, C.J., COATS and MANNHEIMER, JJ.

*OPINION*

COATS, Judge.

Round Island is one of a group of islands in Bristol Bay that have collectively been established by Alaska Statute as the Walrus Islands State Game Sanctuary. *See* AS 16.20.092. A state regulation restricts access to Round Island to those who hold a state-issued permit. 5 Alaska Administrative Code 92.066. Permit holders visiting Round Island must abide by several rules, one of which is that the "discharge of firearms, disturbance or harassment of wildlife, removal of wildlife or parts of wildlife . . . are all prohibited on Round Island." 5 AAC 92.066(2)(D).

According to the complaints filed against them, Adam and Marie Arnariak entered Round Island without the required permits on June 21, 1993, and Adam fired a rifle at a walrus on the island. Initially, both Arnariaks were charged with entering the island without a permit, and Adam was also charged with hunting walrus in a closed area in violation of 5 AAC 92.510(a)(13)(A). The state subsequently filed an information replacing the original hunting complaint against Adam with a charge that Adam had violated 5 AAC 92.066(2)(D) by discharging a firearm on Round Island.

The Arnariaks moved to dismiss the charges on the ground that the state regulations were preempted by the federal Marine Mammal Protection Act (MMPA), 16 U.S.C. §§ 1361–1421h. Judge Milton Souter granted the motion to dismiss. The state now appeals the order dismissing the charges against the Arnariaks. In addition to the usual briefing, the Bristol Bay Native Association and the Togiak Traditional Council have filed an *amicus* brief urging this court to uphold Judge Souter's decision.

Section 101 of the MMPA imposes "a moratorium on the taking and importation of marine mammals and marine mammal products." 16 U.S.C. § 1371(a). Subsection (b) of that statute provides in relevant part:

(b) **Exemptions for Alaskan natives.** Except as provided in section 109 [16 U.S.C. § 1379], the provisions of this Act shall not apply with respect to the taking of any marine mammal by any Indian, Aleut, or Eskimo who resides in Alaska and who dwells on the coast of the North Pacific Ocean or the Arctic Ocean if such taking—

(1) is for subsistence purposes; or

(2) is done for purposes of creating and selling authentic native articles of handicrafts and clothing . . .; and

(3) in each case, is not accomplished in a wasteful manner.

Section 109 of the MMPA contains an express preemption clause, with a provision specifically addressed to the State of Alaska:

(a) **State enforcement of State laws or regulations prohibited without transfer to State of management authority by Secretary.** No State may enforce, or attempt to enforce, any State law or regulation relating to the taking of any species (which term for purposes of this section includes any population stock) of marine mammal within the State unless the Secretary has transferred authority for the conservation and management of that species (hereinafter referred to in this section as "management authority") to the State under subsection (b)(1).

. . . .

(f) **Transfer of management authority to State of Alaska.** (1) The Secretary may not transfer management authority to the State of Alaska under subsection (b)(1) for any species of marine mammal unless—

(A) the State has adopted and will implement a statute and regulations that insure that the taking of the species for subsistence uses—

(i) is accomplished in a nonwasteful manner,

(ii) will be the priority consumptive use of the species, and

(iii) if required to be restricted, such restriction will be based upon—

(I) the customary and direct dependence upon the species as the mainstay of livelihood,

(II) local residency, and

(III) the availability of alternative resources.

16 U.S.C. § 1379. The State of Alaska has not maintained regulations containing a preference for rural subsistence hunting of marine mammals, and the federal government has not transferred management authority for marine mammals to the State of Alaska.

The United States Constitution and the laws of the United States are the supreme law of the land. U.S. CONST. art. VI. "Where a state [law] conflicts with or frustrates federal law, the former must give way." *CSX Transp., Inc. v. Easterwood,* — U.S. —, —, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993).

■■■ Federal preemption of state laws "may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *FMC Corp. v. Holliday,* 498 U.S. 52, 56–57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (internal quotation marks omitted). If a federal statute contains an express preemption clause, the task of statutory construction will first focus on the plain wording of the clause. *CSX Transp.,* — U.S. at —, 113 S.Ct. at 1737. And "[w]here ... Congress has expressly•included a broadly worded preemption provision in a comprehensive statute ... [the] task of discerning congressional intent is considerably simplified." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990).

■■■ The Arnariaks argue that 5 AAC 92.066 is expressly preempted under 16 U.S.C. § 1379. We agree that federal law expressly preempts state regulation relating to the taking of walrus on Round Island.

The state argues, however, that the MMPA's prohibition against the enforcement of "State law[s] or regulation[s] relating to the taking of any species ... of marine mammal within the State" does not preclude the state from enforcing 5 AAC 92.066 because that provision is not a hunting regulation, but

rather a "land use regulation." However, the U.S. Supreme Court has repeatedly held that Congress' use of the phrase "relating to" in an express preemption clause connotes an intent to preempt state law on a broad scale.

In *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Court held that state guidelines for advertising of fares by airlines were preempted by the provision of the federal Airline Deregulation Act (ADA) prohibiting states from enacting or enforcing any law "relating to rates, routes, or services of any air carrier." The Court interpreted the ADA preemption clause as preempting all "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services.'" 504 U.S. at 384, 112 S.Ct. at 2037.

Just as the state in this case argues that the MMPA precludes only state enactments directly regulating hunting, the state in *Morales* argued that the ADA only prevented the states from "actually prescribing rates, routes, or services." *Id.* The Court rejected this claim in no uncertain terms: "This simply reads the words 'relating to' out of the statute. Had the statute been designed to pre-empt state law in such a limited fashion, it would have forbidden the States to '*regulate* rates, routes, and services.'" *Id.* at 385, 112 S.Ct. at 2037–38 (emphasis in original). The Court also rejected the notion that "only State laws specifically addressed to the airline industry are pre-empted, whereas the ADA imposes no constraints on laws of general applicability." *Id.* In the Court's view, "[b]esides creating an utterly irrational loophole (there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute), this notion similarly ignores the sweep of the 'relating to' language." *Id.* at 386, 112 S.Ct. at 2038. *See American Airlines, Inc. v. Wolens,* — U.S. —, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (holding that the preemption clause of the ADA precludes the state from enforcing the Illinois Consumer Fraud Act for allegedly fraudulent advertising of the terms of an airline's frequent flyer program).

In a number of cases the Supreme Court has given an expansive reading to the pre-emption clause (§ 514(a)) of the Employee Retirement Income Security Act (ERISA), which provides: "Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Court has called this preemption clause "conspicuous for its breadth." *FMC Corp.*, 498 U.S. at 58, 111 S.Ct. at 407. In another case, the Court held that "[t]he breadth of § 514(a)'s preemptive reach is apparent from that section's language. A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983) (footnote omitted).

In a case holding that state common law tort and contract actions against insurance companies asserting improper processing of claims for benefits under an insured employee benefit plan were preempted by ERISA, the Court called ERISA's preemption provision "deliberately expansive," and noted again "the expansive sweep of [ERISA's] pre-emption clause." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46–47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987). A similarly broad reading is found in *Ingersoll–Rand*, 498 U.S. 133, 111 S.Ct. 478, in which the Court held that ERISA preempted a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA. *See Andrews v. Alaska Operating Eng'rs–Employers Training Trust Fund*, 871 P.2d 1142 (Alaska), *cert. denied*, —— U.S. ——, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994) (holding that ERISA preempts an action un-der state law in which a former fiduciary of an employee benefit plan governed by ERISA claimed that he had been wrongfully terminated in order to prevent him from reporting possible misuse of trust funds by another fiduciary).

These authorities make it clear that the MMPA provision preempting state laws "relating to the taking of any species ... of marine mammal" is to be read broadly. The history of the Walrus Islands regulations under which the state charged the Arnariaks makes it clear that those regulations "relate to" the taking of walrus. 5 AAC 92.066 is part of a comprehensive scheme of state statutes and regulations with the primary purpose of protecting and preserving walrus on the Walrus Islands. The specific enabling statutes for 5 AAC 92.066 are those creating the Walrus Islands State Game Sanctuary (AS 16.20.090–.094). These statutes include legislative findings that "the Walrus Islands are the sole remaining place in the state where walruses annually haul out on land," that the islands "have great importance as a retreat for the Pacific walrus," and that "[t]he purpose of AS 16.20.090–16.20.098 is to protect the walruses and other game on the Walrus Islands." AS 16.20.090. The statutes authorize the Boards of Fisheries and Game to adopt regulations governing entry, hunting and fishing, and other uses or activities on the islands "for the purpose of preserving the natural habitat and the fish and game of the Walrus Islands State Game Sanctuary." AS 16.20.094.

Both the specific prohibition against discharging a weapon on Round Island, under which Adam Arnariak was charged, and the general requirement upon which an entry permit is conditioned—that the rule against discharging weapons will be followed—are clearly "related to the taking" of walrus.[1] The MMPA defines "take" as "to harass,

---

1. The state argues that interpreting the MMPA to preempt 5 AAC 92.066 would render the MMPA unconstitutional under the fifth and tenth amendments to the United States Constitution. Although the state does not request this court to rule on the constitutionality of the MMPA, it contends that the possibility of rendering the MMPA unconstitutional is a factor that we should consider in deciding the scope of the MMPA's preemption clause. In our view, however, the clarity of the preemption clause's language and the strong body of case law interpreting the term "relating to" preclude our giving any significant weight to the potential unconstitutionality of the MMPA as a factor in determining the scope of the preemption clause. We express no opinion as to the merits of the state's fifth and tenth amendment arguments.

hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13). 5 AAC 92.066(2)(D) prohibits the "discharge of firearms, disturbance or *harassment* of wildlife ... on Round Island." (Emphasis added).

■ The state's protestation that the regulation is intended to protect other game as well as walruses is unavailing. Preemption of laws "relating to" a subject encompasses not only those laws "specifically addressed to" the subject, but also "laws of general applicability" that relate to the subject. *Morales,* 504 U.S. at 386, 112 S.Ct. at 2038. It is possible that "[s]ome state actions may affect [the taking of marine mammals] in too tenuous, remote, or peripheral a manner" for the MMPA to have preemptive effect. *Morales,* 504 U.S. at 390, 112 S.Ct. at 2040 (quoting *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21). The state regulation at issue here, however, "plainly does not present a borderline question." *Id.*

Because 5 AAC 92.066 relates to the taking of a species of marine mammal, it may not be enforced against the Arnariaks. The district court therefore did not err in dismissing the charges against the couple. The district court's order dismissing the charges against Adam and Marie Arnariak is AFFIRMED.