KEY CAPITAL CORPORATION vs. M&S LIQUIDATING
CORPORATION & others.[1]

No. 88-P-1028.

Suffolk. June 5, 1989. — August 18, 1989.

Present: GREANEY, C.J., KASS, & WARNER, JJ.

*Uniform Commercial Code*, Bulk transfer. *Practice, Civil*, Summary judg-
ment. *Words*, "Major part."

For purposes of the bulk transfer provisions of the Uniform Commercial
Code, the words "major part," appearing in G. L. c. 106, § 6-102 (1),
mean, as matter of law, more than fifty percent of the property trans-
ferred, measured by value. [724-727]
A witness's conclusory deposition testimony regarding his understandings,
beliefs, and assumptions was not sufficient to withstand a motion for
summary judgment in a civil action. [727-728]

CIVIL ACTION commenced in the Superior Court Department
on January 23, 1984.

A motion for summary judgment was heard by *Paul K.
Connolly*, J., and the case was tried before *Mel L. Greenberg*, J.

*John Egan* for the defendants.
*Ethan Warren* for the plaintiff.

WARNER, J. The plaintiff brought an action against M&S
Liquidating Corporation (M&S) for breach of a telephone
equipment lease, and against Morrison & Schiff, Inc., and
Hebrew National Kosher Foods, Inc. (Hebrew National), trans-
ferees of some of M&S's inventory, seeking payment of any
underlying debt of M&S on account of alleged violations of
the bulk transfer provisions of the Uniform Commercial Code.
See G. L. c. 106, §§ 6-101 et seq.

A partial summary judgment was entered determining that
M&S was liable for a breach of the lease. After a jury trial in

---

[1] Morrison & Schiff, Inc., and Hebrew National Kosher Foods, Inc.

the Superior Court, a final judgment entered assessing damages
(in a stipulated amount) and counsel fees against M&S flowing
from the breach and imposing liability on Morrison & Schiff
and Hebrew National for the amount of the stipulated damages
only. The defendants have appealed; M&S argues that there
were genuine issues of fact relating to waiver or modification
of the lease; Morrison & Schiff and Hebrew National contend
that there was error of law in the application of the bulk transfer
law.

1. We consider first the issue of the alleged violation of the
bulk transfer law. It is unnecessary to state in any detail the
transactions between M&S and Morrison & Schiff and Hebrew
National, except to say that M&S sold to these defendants in
bulk somewhere between twenty-three and twenty-six percent
of its inventory of meat and meat products. In answer to special
questions, the jury said that this transfer was of a "major part"
of M&S's inventory on hand at the time and assigned a value
to the inventory transferred.[2]

Article 6 of the Uniform Commercial Code, as enacted in
Massachusetts, provides: "A 'bulk transfer' is any transfer in
bulk and not in the ordinary course of the transferor's business
of a *major part* of the materials, supplies, merchandise or other
inventory . . . of an enterprise subject to this Article" (emphasis
supplied). G. L. c. 106, § 6-102(1). There is no question that
M&S was a covered enterprise (see § 6-102[3]), that notice
to its creditors was not given in accordance with Article 6 (see
§ 6-106), that the sale to Morrison & Schiff and Hebrew Na-
tional was not in the ordinary course of M&S's business, or
that, if the transaction constituted a bulk transfer, the transferees
are liable to the plaintiff as creditor of M&S. See § 6-105.
The narrow question for decision, one which has not hitherto

---

[2] The value given by the jury was obviously arrived at by their impermis-
sibly adding to a figure representing twenty-three percent of M&S's inven-
tory value an amount attributable to sales commissions paid to Hebrew
National in connection with the sale of $125,000 worth of inventory (not
found to have been transferred out of the ordinary course of M&S's business)
to M&S's regular customers.

been considered by our appellate courts, is what meaning is to be given to the words "major part," as used in § 6-102(1).[3]

The defendants moved for a directed verdict and for judgment notwithstanding the verdict on the ground that the words "major part" meant, as matter of law, more than fifty percent of the value of current inventory. The motions were denied.[4] In addition, the defendants' request that the jury be so instructed was denied. Instead, the judge instructed the jury that, "in determining whether a major part of inventory was sold, or not, . . . size alone under the law is not determinative, it is not determinative one way or the other in and of itself. But obviously the amount, the size of the inventory that was sold and transferred by M&S . . . to these other two corporations is some evidence for you to consider. It is evidence for you to consider as to your determination on whether or not a major part was involved. . . . [S]o you have to go back to the evidence and say, . . . how much of the inventory was sold and does it then amount, in your minds, in the context of this transaction, to a major part of the particular inventory that M&S . . . had on hand. . . ." The jury were thus given no meaningful guidance on the standard they were to apply. Under these instructions they were undoubtedly prompted to the application of a substantial part test. This, by any examination of the law, was the wrong guide.

---

[3] The jury also found that M&S had transferred a substantial part of its equipment to Morrison & Schiff and Hebrew National. Such a transfer is not subject to Article 6 unless combined with a bulk transfer of inventory. See G. L. c. 106, § 6-102(2).

The plaintiff's arguments that the numerous sales of product inventory to M&S's regular customers should be considered as a single sale to Morrison & Schiff and Hebrew National or that the purchase by these defendants of a substantial part of M&S's assets with the knowledge that M&S was going out of business brings the transaction within the bulk transfer law were, from a fair reading of the record before us, not adequately raised in the Superior Court, and we do not consider them. See *Bernard* v. *Cameron & Colby Co.*, 397 Mass. 320, 323 (1986); *Matthews* v. *School Comm. of Bedford*, 22 Mass. App. Ct. 374, 379 (1986).

[4] The court took no action on the defendants' pretrial motion for a ruling to this effect.

We begin our analysis by a comparison of the relevant language of the former bulk sales law of Massachusetts with the version adopted in Article 6 of the Uniform Commercial Code in 1958 and unchanged thereafter. See St. 1957, c. 765, § 1. The old law applied to "[t]he sale in bulk of *any part or the whole* of a stock of merchandise." St. 1903, c. 415, § 1. Article 6, on the other hand, adopted two quantitative tests with respect to bulk transfers. The first, in connection with transfers of inventory, made the bulk sale provisions applicable where a "major part" is involved. § 6-102(1). The second, relating to transfers of equipment (which do not come within the reach of Article 6 at all unless made in conjunction with a bulk transfer of inventory, see note 3, *supra*) calls for application of the law in the case of a transfer of a "substantial part." § 6-102(2). There can be no serious question that the use of "major part" effected a change in the required minimum quantum of inventory transfer.[5] Moreover, the words "major part" and "substantial part," used side by side in § 6-102(1) and (2), should be considered to carry different and ordinary meanings. See *Casey* v. *Massachusetts Elec. Co.*, 392 Mass. 876, 880 (1984); *Rein* v. *Marshfield*, 16 Mass. App. Ct. 519, 522 (1983).

The general purposes of the Uniform Commercial Code are embodied in G. L. c. 106, § 1-102(2). They include: "(*a*) to simplify, clarify and modernize the law governing commercial transactions" and "(*c*) to make uniform the law among the various jurisdictions." Among the specific purposes of Article 6 of the Code is "to simplify and make uniform the bulk sales laws of the states that adopt this Act." G. L. c. 106, § 6-101, Uniform Commercial Code comment 1. We turn, therefore, to decisions in other jurisdictions. See *Canter* v. *Schlager*, 358 Mass. 789, 792-793 (1971). Most courts which have considered the meaning of "major part" have concluded that a transfer of more than fifty percent of the value of inventory

---

[5] The plaintiff seizes on a general statement in the Massachusetts Code Comment to G. L. c. 106, § 6-101, Mass. Gen. Laws. Ann. at 157 (West 1958), that, with exceptions not here material, Article 6 "is substantially *in accord with prior statutory and case law*." The semantical changes with which we deal make that comment unpersuasive in context.

must be made in order for the bulk transfer provisions of the Uniform Commercial Code to come into play. See *Martin Marietta Corp.* v. *New Jersey Natl. Bank*, 653 F.2d 779, 782 (3d Cir. 1981); *In re Albany Brick Co.*, 12 UCC Rep. Serv. 165, 166 (U.S. Dist. Ct. M.D. Ga. 1972); *Wikelund Wholesale Co.* v. *Tile World Factory Tile Warehouse*, 57 Ill. App. 3d 269, 271-272 (1978). See also *Stone's Pharmacy* v. *Pharmacy Accounting Management*, 812 F.2d 1063, 1067 & n.2 (8th Cir. 1987)(although the court found it unnecessary to decide the meaning of "major part," it noted that other jurisdictions that have adopted the "major part" language have construed it to mean more than fifty percent); *In re Shirts "N" Slax, Inc.*, 4 UCC Rep. Serv. 873, 874 (U.S. Dist. Ct. E.D. Pa. 1967) (where respondent in a case brought under Article 6 had purchased only one-third of debtor's inventory, his claim to that property was substantial rather than merely colorable for purposes of the Bankruptcy Court's summary jurisdiction); *Froehle & Roth* v. *Smith Enterprises, Inc.*, 27 Ohio App. 3d 359, 361 (1986) (although the court did not directly adopt the over fifty percent rule, it did "apply" the *In re Albany Brick, supra*, analysis to the facts and specifically referred to its interpretation of "major part" as meaning more than fifty percent); *Bergen, Johnson & Olson* v. *Verco Mfg. Co.*, 690 S.W.2d 115, 118 (Tex. Ct. App. 1985)(summary judgment reversed for failure to show transfer of a "major part," with the court noting that other jurisdictions have interpreted "major part" to mean over fifty percent). Compare *Moskowitz* v. *Michaels*, 29 Colo. App. 44, 46-47 (1970)(purchase of only forty-nine percent of debtor's inventory is not a "meritorious defense" to a claim based on failure to comply with Article 6).

Professor Hawkland gives the following overview. "Pre-Code bulk transfer statutes universally contained quantitative limitations exempting transactions from the statutes unless a certain amount of described property had been conveyed. While these pre-Code laws differed to a considerable extent in the expression of their quantitative limitations, all were stated in general language, such as 'substantial part,' 'major part,' 'large part,' or simply 'in bulk.' Article 6 follows this approach,

using the phrases 'major part' and 'in bulk' as the quantitative limitations on transfers of inventory, and 'substantial part' as the quantitative limitation on the transfers of equipment. . . . The term 'major part' is not defined, but it probably means that more than 50% of the inventory must be transferred before a transaction comes within the scope of Article 6. This conclusion is based on the dictionary meaning of the word 'major' and the interpretation of this word by the states where it appeared in their pre-Code bulk transfer statutes. Major has the same root meaning as majority, and thus the dictionary definition of the word is an amount that is more than half of the total amount of a given group. Moreover, states which used the words 'major part' as the quantitative limitation in their pre-Code bulk transfer laws gave this dictionary meaning to the term. As a result, it has been generally assumed that the words 'major part' found in subsection 6-102(1) mean 'more than fifty percent of the inventory,' and most courts have so held" (footnote omitted). 6 Hawkland, Uniform Commercial Code Series § 6-102:07 (1984).[6] Most commentators have endorsed the fifty percent rule where the words "major part" are used. Batten, Article 6: Bulk Transfers, 18 Wake Forest L. Rev. 339, 344 (1982); 3A Duesenberg & King, Sales and Bulk Transfers Under the U.C.C. § 15:02(1) (1988); Hawkland, The Trouble with Article 6 of the U.C.C.: Some Thoughts About Section 6-102, 81 Comm. L.J. 83, 86 (1976). The rule has been generally accepted and understood by the commercial community. See 6 Hawkland, Uniform Commercial Code Series §§ 6-102:07 & 102:09 (1984).

---

[6] "Once a bulk transfer of inventory has been made, a bulk transfer of equipment can be found if that transfer is of a 'substantial part of the equipment' of an enterprise falling within the scope of Article 6. Unlike the words 'major part' that impose the principal quantitative limitation on bulk transfers of inventory, 'substantial part' has no clear meaning based on the dictionary sense of the phrase or its common law antecedents. Consequently, while the commercial community and the courts have generally regarded major part to mean more than 50% of the inventory, no such consensus exists as to the meaning of substanial part of the equipment. Generally speaking, however, it is correct to say that the word 'substantial' means something less in terms of quantity than 'major.' " *Id.* at § 6-102:09.

We are persuaded by the consistency and acceptance of interpretation. We also have in mind the desirability of uniformity of application of the Uniform Commercial Code and of a bright line, commercially certain and accepted (even if somewhat arbitrary), test. Therefore, we now hold, with the weight of authority elsewhere, that the words "major part" in G. L. c. 106, § 6-102(1), mean, as matter of law, more than fifty percent of the property transferred, measured by value.[7]

The judgment against Morrison and Schiff and Hebrew National is reversed, and a new judgment is to be entered for them. There is no merit to the plaintiff's argument that there must be a new trial because the jury could have disbelieved the existence of $125,000 worth of inventory sold to regular customers. The jury's valuation of the inventory which they found transferred, see note 2, *supra*, belies that theory.

2. M&S argues that, through the deposition testimony of its president, it raised genuine issues of material fact as to waiver and modification so as to preclude the entry of the partial summary judgment determining breach of the lease. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). The best that

---

[7] We do not rehearse the ongoing debate about the necessity or desirability of Article 6 in the present credit economy. Article 6 may have been poorly drafted and the protections which it purports to afford illusory. The onerous burdens and risks which it imposes in the light of what some believe are minimum benefits have caused reexamination of fundamental principles. Committees of the Commercial Law League of America, the American Bar Association's section on corporations, banking and business law and the Uniform Law Commissioners have each proposed reconsideration of Article 6. The Uniform Law Commissioners have suggested repeal or revision, in the latter case including an explicit definition of a bulk sale, to conform with decisional law and common commercial understanding, to mean one of more than half the seller's assets measured by value. See the discussion in Baker, Bulk Transfers Act — Patch, Bury, or Renovate? 38 Bus. Law 1771 (1983); Harris, The Article 6 Drafting Committee's New Approach to Asset Acquisitions, 42 Bus. Law. 1261 (1987); Harris & Baker, How the Proposed Revisions to UCC Article 6 (Bulk Transfers) Would Affect Creditors, 92 Comm. L.J. 123 (1987); Hawkland, Proposed Revisions to U.C.C. Article 6, 38 Bus. Law. 1729 (1983); Rapson, U.C.C. Article 6: Should It Be Revised or "Deep-Sixed"?, 38 Bus. Law. 1753 (1983). The proposed draft of the Uniform Law Commissioners has been recently approved, with modifications not here relevant, by the council of the American Law Institute.

can be said about the deposition testimony is that it contains bare assertions and conclusions regarding the president's understandings, beliefs and assumptions. That is not enough to withstand a well pleaded motion for summary judgment. A response "must set forth specific facts showing that there is a genuine issue for trial." Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). See *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 555 (1976); *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985); *Cullen Enterprises, Inc.* v. *Massachusetts Property Ins. Underwriting Assn.*, 399 Mass. 886, 889-892 (1987); *Dwyer* v. *Piccicuto*, 25 Mass. App. Ct. 910, 912 (1987). Compare *Capitol Bank & Trust Co.* v. *Pre-Schools, Inc.*, 10 Mass. App. Ct. 907 (1980). There was no error in the entry of partial summary judgment against M&S.

> *Judgment reversed as to Morrison ·& Schiff, Inc., and Hebrew National Kosher Foods, Inc. A new judgment is to enter for those defendants.*

> *Judgment affirmed as to M&S Liquidating Corporation.*