ROBERT J. FAIRNENY & another[1] *vs.* SAVOGRAN COMPANY.

Norfolk. March 4, 1996. - April 17, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Civil,* Motion to dismiss. *Employee Retirement Income Security Act. Federal Preemption. Statute,* Federal preemption. *Employment,* Termination. *Contract,* Implied contract, Employment. *Libel and Slander.*

This court concluded that plaintiffs' State claims of wrongful discharge from employment in retaliation for carrying out their fiduciary obligations as trustees of an employee stock ownership plan were preempted by the Federal Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144, where the claims "relate[d] to" the plan and where ERISA itself contained civil enforcement provisions for fiduciaries such as the plaintiffs, who sought to remedy the breach of fiduciary duty of another plan trustee. [471-476]

Where a corporation's adoption of an employee stock ownership plan was not separable from certain communications by the company's president, who was also a trustee of the plan, a defamation claim arising from the communications was "relate[d] to" the plan and was thus preempted by the Federal Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144. [476]

CIVIL ACTION commenced in the Superior Court Department on December 31, 1990.

The case was heard by *Charles F. Barrett,* J., on a motion to dismiss.

Leave to appeal was granted in the Appeals Court by *Edith W. Fine,* J. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael Sobol (Samuel M. Shafner* with him) for the defendant.

*Robert S. Potters* for the plaintiffs.

GREANEY, J. We transferred the case to this court on our own motion to decide whether the plaintiffs' claims of wrong-

[1]Robert J. Zawacki.

ful discharge and defamation[2] are preempted by § 514 (a), 29 U.S.C. § 1144, of the Federal Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (1994).[3] A judge in the Superior Court concluded that any connection between the plaintiffs' claims and the provisions of ERISA was "too tenuous and peripheral to warrant a finding that the plaintiffs' cause of action 'relates to' an employee benefit plan," and denied the defendant's motion to dismiss for lack of subject matter jurisdiction. See Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974). A single justice of the Appeals Court properly allowed the defendant to pursue an interlocutory appeal of the denial of its motion to dismiss. See *Leavitt* v. *Mizner*, 404 Mass. 81, 87-88 (1989). We conclude that the plaintiffs' claims are preempted by ERISA, and that the defendant was entitled to judgment on the basis of its motion to dismiss.

For purposes of deciding a motion to dismiss, we accept as true the allegations in the complaint, and draw all reasonable inferences in favor of the party whose claims are the subject of the motion. See *C.M.* v. *P.R.*, 420 Mass. 220, 221 (1995). The complaint, including various exhibits attached to it and incorporated by reference, makes the following allegations. The plaintiffs are former officers and directors of Savogran Company (company), a Massachusetts corporation which manufactures paint remover and other chemical-based products. On December 16, 1988, the company's directors voted to adopt an employee stock ownership plan (plan) and to appoint the plaintiffs and Robert Lenk (then the company's president) as the trustees of the plan. As employees of the company, the plaintiffs also were participants in the plan. Since the plan was subject to ERISA regulation, the plaintiffs

[2]Counts I through III of the plaintiffs' amended complaint asserted a derivative action for dissipation of corporate assets, a claim of breach of fiduciary duty by Robert Lenk, the former president of the Savogran Company, and a class action claim on behalf of the participants and beneficiaries of Savogran's Employee Stock Ownership Plan. The plaintiffs stipulated to the dismissal with prejudice of these claims. In addition, the plaintiffs stipulated to dismissal without prejudice of claims against five individual defendants, including claims against Lenk.

[3]Section 514 (a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. The term "State law" encompasses "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144 (c) (1994).

and Lenk, as trustees, assumed fiduciary responsibilities for the administration of the plan. See 29 U.S.C. §§ 1101-1114. The nature and extent of these newly created duties was set out at length in a March 10, 1989, letter from counsel, addressed to the plaintiffs and Lenk.[4] Among other things, the letter pointed out that a plan fiduciary has a responsibility to take reasonable corrective measures when he is aware that a cofiduciary has failed, or is failing, to comply with his fiduciary obligations.

Compelled by their fiduciary responsibilities, the plaintiffs began to scrutinize Lenk's conduct, and to confront him with instances of misconduct that violated his fiduciary obligations to the company and the plan. For example, during 1989 and 1990, Lenk failed to justify or document expenditures of company funds under his control, exposing the company to possible tax liability; used company funds to cover personal expenditures; and directed corporate counsel to perform personal legal services for him. Lenk also failed to make restitution for improper expenditures he had caused the company to make before the plan went into effect. In retaliation, and to avoid detection of additional misconduct on his part, Lenk accused the plaintiffs of misconduct, which resulted in their termination without cause by the company's board of directors. In addition, Lenk circulated false and defamatory letters about the plaintiffs to a professional search firm retained by the board to seek Lenk's replacement, and to a vice president of the United States Trust Company.[5]

1. *Wrongful termination claims.* An essential premise of the complaint is that State law provides a remedy when an ERISA fiduciary is terminated in retaliation for carrying out fiduciary obligations because, under State law, that is a discharge in violation of a clearly defined public policy. Because

[4]This letter was attached as an exhibit to the complaint and incorporated into it by reference.

[5]Copies of the correspondence which forms the basis of the defamation claims were attached to the complaint and incorporated by reference. In a May 29, 1990, letter to the vice president of the United States Trust Company, Lenk accused the company's "Junior Officers" (the plaintiffs) of entering into an "unholy alliance" with members of the board of directors that "was not infact [*sic*] serving the employees [*sic*] best interests." In a July 3, 1990, letter to the professional search firm, Lenk asserted that "two officer directors [the plaintiffs] and two attorney directors [ ] aligned against me to hire my replacement."

the defendant does not argue otherwise, we assume, without deciding, that we would recognize as wrongful the termination of an employee who is discharged in retaliation for carrying out a fiduciary duty in connection with a plan governed by ERISA.[6] See *GTE Prods. Corp.* v. *Stewart,* 421 Mass. 22, 33 (1995), and cases cited therein. See also *Authier* v. *Ginsberg,* 757 F.2d 796, 798 (6th Cir.) (concluding that Michigan would recognize as protected activity employee's compliance with ERISA fiduciary obligations), cert. denied, 474 U.S. 888 (1985). Nonetheless, we conclude that the plaintiffs may not pursue their wrongful termination claims because those claims are preempted by ERISA.

In view of existing decisional law, the conclusion that the claims are preempted would be difficult to avoid. See *Kelly* v. *Fort Dearborn Life Ins. Co., ante* 15, 16-17 (1996). Contrast *Pace* v. *Signal Technology Corp.,* 417 Mass. 154, 157-158 (1994) (noting split in authority as to whether State common law claim of misrepresentation is preempted by ERISA; claim did not relate to plan). In the case of *Ingersoll-Rand Co.* v. *McClendon,* 498 U.S. 133 (1990), the United States Supreme Court held that ERISA preempts a State law claim of wrongful discharge premised on an employer's interference with an employee's attainment of rights under an employee benefit plan. In the *Ingersoll-Rand* case, the Court observed, "[A] state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. . . . Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements." (Citations omitted.) *Id.* at 139. Where the "existence of a pension plan is a critical factor in establishing liability," *id.* at 139-140, a State law claim will be preempted. In addition, the Court noted, the claim brought by the plaintiff in *Ingersoll-Rand* conflicted directly with an existing ERISA cause of action. This fact provided an independent basis for a finding of preemption by implication. *Id.* at 142-145.

---

[6]At oral argument, counsel for the plaintiffs suggested that, as directors of the company, the plaintiffs had a fiduciary duty to guard company assets independent of ERISA, and that the complaint should be read to state a claim on this basis. The complaint, however, asserts that the plaintiffs' obligation to police Lenk's conduct arose with, and was attributable entirely to, the adoption of the plan.

The United States Supreme Court has not considered whether a wrongful discharge claim brought by a person in the plaintiffs' circumstances, rather than by a plan beneficiary or participant claiming entitlement to benefits under an ERISA-governed plan, is preempted by ERISA. However, other Federal and State courts have considered the issue, and have concluded uniformly that wrongful discharge claims similar to those brought by the plaintiffs are subject to ERISA preemption. See *Anderson* v. *Electronic Data Sys. Corp.*, 11 F.3d 1311, 1313-1315 (5th Cir.), cert. denied, 115 S. Ct. 55 (1994); *Hashimoto* v. *Bank of Hawaii*, 999 F.2d 408, 410-411 (9th Cir. 1993); *Authier* v. *Ginsberg*, *supra* at 799-802. See also *McLean* v. *Carlson Cos.*, 777 F. Supp. 1480, 1483 (D. Minn. 1991) (claim by whistleblower); *Andrews* v. *Alaska Operating Eng'rs-Employers Training Trust Fund*, 871 P.2d 1142, 1144-1147 (Alaska) (same), cert. denied, 115 S. Ct. 201 (1994). These cases reason that claims, like those brought by the plaintiffs, "relate to" an employee benefit plan because such claims (1) depend on the existence of an ERISA plan, see *Anderson* v. *Electronic Data Sys. Corp.*, *supra* at 1314; *Authier* v. *Ginsberg*, *supra* at 800; (2) would involve at least some inquiry at trial into the character and extent of the fiduciary duties imposed by ERISA, see *Hashimoto* v. *Bank of Hawaii*, *supra* at 411; *McLean* v. *Carlson Cos.*, *supra* at 1483; and (3) would introduce inconsistency into the administration of ERISA plans because not all of the States recognize, or treat uniformly, claims of retaliatory discharge. See *Authier* v. *Ginsberg*, *supra* at 802.

The plaintiffs' retaliatory discharge claims clearly are subject to ERISA's preemption provision on these bases. The plaintiffs, described in the complaint as employees at will, claim no protection from termination apart from their status as fiduciaries of an ERISA plan whose performance of their duties should be protected from adverse employment action. See *Jackson* v. *Action for Boston Community Dev., Inc.*, 403 Mass. 8, 9 (1988) (as general rule, an employee at will may be terminated "for almost any reason or for no reason at all"). Their retaliatory discharge claims, therefore, depend on the existence of an ERISA plan and their status as fiduciaries of that plan. According to the allegations in the complaint, the parties' motivations would be at issue in a trial of this case. It must be inferred, therefore, that the character and scope of

the fiduciary duties mandated by ERISA would be an issue at trial on which a jury would require instructions. As the United States Court of Appeals for the Sixth Circuit observed in the *Authier* case, allowing a State court to "define the scope of a fiduciary's duties under ERISA and the [remedies available to an aggrieved plaintiff] . . . runs contrary to Congress's desire to establish a uniform federal law regulating pension plans." *Authier* v. *Ginsberg, supra* at 802.

In addition, ERISA's "detailed and carefully balanced remedy provisions," *Anderson* v. *Electronic Data Sys. Corp., supra* at 1314, provide remedies for fiduciaries and plan participants (as previously noted, the plaintiffs were both) seeking to remedy a breach of fiduciary duty by a plan trustee. Under ERISA, a fiduciary must, among other duties, provide "proper management, administration and investment of [plan] assets . . . and avoid[ ] . . . conflicts of interest." *Mertens* v. *Hewitt Assocs.*, 508 U.S. 248, 251-252 (1993), quoting *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U.S. 134, 142-143 (1985). "Section 409 (a), 29 U.S.C. § 1109 (a), makes fiduciaries liable for breach of these duties, and specifies the remedies available against them: the fiduciary is personally liable for damages . . . , for restitution . . . , and for 'such other equitable or remedial relief as the court may deem appropriate,' including removal of the fiduciary." *Id.* In turn, a cofiduciary may bring a civil action to enforce the provisions of § 409 (a), 29 U.S.C. § 1109 (a). *Id.* at 252-253. See 29 U.S.C. § 1132 (a) (2). See also *Crawford* v. *Lamantia*, 34 F.3d 28, 31 (1st Cir. 1994) (§ 1132 [a] [2] of 29 U.S.C. authorizes participant, beneficiary or fiduciary to bring civil action for breach of fiduciary duty proscribed by 29 U.S.C. § 1109 [a]), cert. denied, 115 S. Ct. 1393 (1995).

To the extent the plaintiffs were motivated by concern about misconduct on Lenk's part affecting the value of the plan, they could have sought relief under these provisions. Had they done so, they also might have been able to claim protection from, or redress for, termination under ERISA's "whistleblower provision," 29 U.S.C. § 1140, which "provides a remedy for a fiduciary [or a plan participant] who is discharged because [he or] she 'has given information or has testified or is about to testify in any inquiry or proceeding relating to [ERISA].' " *Hashimoto* v. *Bank of Hawaii, supra* at 411, quoting 29 U.S.C. § 1140. Because ERISA's civil

enforcement scheme provides a remedy for persons situated as the plaintiffs were, recognition of a State law claim based on these facts would conflict impermissibly with ERISA's civil enforcement scheme. See *Ingersoll-Rand Co.* v. *McClendon, supra* at 144; *Anderson* v. *Electronic Data Sys. Corp., supra* at 1314.[7]

The plaintiffs' other claims of wrongful discharge also are preempted by ERISA. Both plaintiffs maintain that their termination violated an implied contractual obligation of good faith and fair dealing. An at-will employee generally does not have an enforceable claim for discharge in breach of the implied covenant of good faith unless he can establish that his discharge is contrary to a well-defined public policy.[8] See *King* v. *Driscoll,* 418 Mass. 576, 582-583 (1994); *Siles* v. *Travenol Labs., Inc.,* 13 Mass. App. Ct. 354, 358 (1992). The only such policy inferable from the complaint would be the protection of an ERISA fiduciary. Thus, the plaintiffs' claims of discharge in breach of an implied covenant of good faith and fair dealing cannot be differentiated from the claims previously discussed, and also are preempted. See *Andrews* v. *Alaska Operating Eng'rs-Employers Training Trust Fund, supra* at 1148-1149.

Fairneny's claims of promissory estoppel and breach of an implied contract of employment for a term of years suffer from the same defect. The essential allegation in these counts is that the terms of the plan, which were devised and implemented by Fairneny, gave rise to a reasonable expectation on Fairneny's part that he was guaranteed employment

---

[7]We reject as inconsistent with the complaint the plaintiffs' contention that their wrongful discharge claims are not preempted because the facts on which the claims are based occurred prior to the adoption of the plan. The complaint asserts that the plaintiffs were discharged for confronting Lenk about his alleged misconduct after the company's adoption of the plan, precisely because they had assumed the role of plan fiduciaries. Moreover, as we have noted, the plaintiffs, as at-will employees, claim protection from adverse employment action on the basis of their status as plan fiduciaries whose function warrants legal protection. The wrongful discharge claims cannot logically be described as claims which arose prior to the adoption of the plan.

[8]We are not concerned in this case with an allegation that the plaintiffs were discharged so that the company, their employer, could appropriate commissions already earned and due to them. See *Gram* v. *Liberty Mut. Ins. Co.,* 384 Mass. 659, 671-672 (1981); *Fortune* v. *National Cash Register Co.,* 373 Mass. 96, 105-106 (1977).

with the company for a minimum of seven years so that he would realize the full benefit of the plan. Litigation of these claims would require interpretation of the terms of the ERISA plan. Moreover, these claims are, in essence, claims by a plan participant to benefits under an ERISA-governed plan, which would have to be brought under the civil enforcement provisions of ERISA, if at all. See *Dytrt* v. *Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 896-897 (9th Cir. 1990) (State law claim of implied contractual obligation preempted by ERISA).

2. *Defamation claims.* The question with respect to the plaintiffs' defamation claims is much closer. Damage to a plaintiff's reputation in the business community is not a matter closely related to core concerns of the ERISA legislation. In this case, however, the company's adoption of the plan and the communications giving rise to the defamation claims appear inseparable. Establishing the defamatory nature of Lenk's communications, see note 5, *supra*, would put in issue the reason for the plaintiffs' confrontation with him. Thus, any trial of the defamation claim inevitably would involve testimony about the provisions of the plan, the precise nature of the plaintiffs' duties as fiduciaries, and Lenk's alleged breach of his fiduciary obligations. These claims of defamation are inextricably bound up with the existence and content of the plan. See *Ingersoll-Rand* v. *McClendon, supra* at 140. We conclude, therefore, that these claims also "relate to" an employee benefit plan, and are preempted by ERISA.

3. *Disposition.* The case is remanded for entry of a judgment in favor of the defendant, Savogran Company, as to all of the remaining counts in the plaintiffs' complaint.

*So ordered.*