Fabricant, J.
INTRODUCTION
This action arises from the defendant air charter company’s imposition of a twenty-dollar per ticket “fuel surcharge fee,” allegedly without prior notice to the plaintiff passengers. Presently before the Court is the defendant’s “Motion to Dismiss or, in the Alternative, for Summary Judgment.” For the reasons that will be explained, the motion will be allowed.
BACKGROUND
The complaint alleges the following facts. In November 1999, the plaintiffs, Fenn and Zadeh, planned a family vacation to Aruba for themselves and their son, to begin on December 11,1999. Relying on advice from his travel agent, Fenn determined that the lowest available airfare was the $429 per person advertised by the defendant, Transnational Travel, Inc. (“TNT”), for charter tickets. Fenn bought three tickets at that price, authorizing his travel agent to charge his credit card, which the agent had on file. He was not required to sign any documents, nor was he informed of the federal regulatory requirement that he receive and sign a written contract, nor were the plaintiffs informed of the possibility of any subsequent price increase. “A few days before the scheduled departure,” Fenn picked up the tickets from the travel agent, “but did not read carefully the voluminous additional materials enclosed with his tickets.”
On December 11, 1999, the family arrived at the airport to find a representative of the defendant “collecting from each passenger $20 in cash or check, and telling the passengers that they could not board the *715 airplane unless they paid the surcharge.” Fenn then examined the materials he had received with the tickets, and "discovered buried in the materials a one-page notice from TNT notifying passengers that they could be subject to a ‘$15.00 — $30.00 per person price increase, which covers the fuel increase and associated administrative costs,’ which must be paid when all passengers check-in.” The plaintiffs “reluctantly” paid the surcharge, a total of $60.00 for their three-member family, “since it was the only way they could board the airplane and continue on with their family vacation.”
The plaintiffs further allege that the defendant makes a “practice of routinely collecting from each of its passengers on the day of travel, as a condition of travel, and without right of cancellation or refund, a surcharge supposedly due to TNT’s increased fuel costs.” Further, that the defendant “clearly knew of the alleged fuel surcharge long before the scheduled departure, but failed properly to notify its customers of the customaiy surcharge until its passengers arrived at the airport on the day of departure.” On this basis, the plaintiffs seek to represent a class of “all consumers who purchased airline tickets with TNT and were charged a fuel surcharge and were not notified of their contractual rights,” excluding TNT employees, agents, officers and directors.[1]
The plaintiffs filed this action on June 18, 2001. The complaint asserts three causes of action under Massachusetts law: violation of G.L.c. 93A (count I); breach of contract (count II); and misrepresentation (count III). The complaint also asserts, as count IV, a claim for violation of certain regulations issued by the United States Department of Transportation (“DOT”) pursuant to the Airline Deregulation Act of 1978, governing the operation of charters, published at 14 C.F.R. §380 etseq. As relief, the complaint seeks treble damages and attorneys fees. Defendant served the present motion in August of 2001, and then, in November of 2001, served a motion to stay discovery pending decision on this motion. All of the motion papers were filed on February 13, 2002, and the Court (Butler, J.) allowed the motion to stay discovery on February 15, 2002.[2]
The defendants’ motion challenges the sufficiency of the complaint, arguing that the state law claims are all pre-empted by the Airline Deregulation Act (known as the “ADA”), and that no private right of action exists to enforce the DOT regulations. As a fall-back position, the defendant contends it is entitled to summary judgment based on facts it presents by affidavit, together with certain facts alleged in the complaint, on the ground that it made full and timely disclosure of the fuel surcharge. Plaintiffs dispute defendant’s legal contentions as to the sufficiency of its claims, and assert a need for discovery before they can respond to defendant’s request for summary judgment. The Court will first address the legal sufficiency of the claims, and then consider whether summary judgment is warranted at this time, on the record presented, with respect to those claims determined to be legally sufficient.
I. The Motion to Dismiss
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b), the Court accepts as true all factual allegations of the complaint, along with reasonable inferences therefrom. Fairney v. Savogran Co., 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). “[The] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Charbonnier v. Amico, 367 Mass. 146, 152 (1975); Whittinsville Plaza Inc. v. Kotseas, 378 Mass. 85, 89 (1979). “[A] complaint is not subject to dismissal if it would support relief on any theory of law.” Whittinsville, 378 Mass. at 89; see also C.M. v. P.R., 420 Mass. 220, 231 (1995). A state law claim that is pre-empted by federal law is subject to dismissal, as is a claim asserted under a statute or regulation that authorizes no private right of action. See Fairneny v. Savogran Company, 422 Mass. at 470; All Brands Container Recovery, Inc. v. Merrimack Valley Distributing Co., Inc., 54 Mass.App.Ct. 297, 297 (2002).
A. Preemption
“The Airline Deregulation Act of 1978 prohibits states from ‘enact[ing] or enforc[ing] any law . . . relating to [air carrier] rates, routes, or services." American Airlines v. Wolens, 513 U.S. 219, 221-22 (1995), quoting 49 U. S. C. § 1305(a)(1). The Supreme Court has interpreted the phrase “relating to” broadly, referring to decisions giving broad application to analogous language in the Employee Retirement Income Security Act of 1974 (“ERISA”). The Court has also given broad scope to the prohibition on state enactment or enforcement, applying it not only to enforcement actions brought by state officials under airline-specific regulatory programs, see e.g., Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992), but also to private suits brought under generally applicable state consumer protection statutes. See American Airlines v. Wolens, 513 U.S. at 224-28.
The Court has held, however, that preemption does not “shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline’s alleged breach of its own, self-imposed undertakings."Id. at 228-29. The Court explained that “[a] remedy confined to a contract’s terms simply holds parties to their agreements,” rather than enforcing any state “ ‘law, rule, regulation, standard, or other provision having the force and effect of law’ within the meaning of [§] 1305(a)(1).” Id. at 229. The distinction between contract claims and statutory consumer pro *716 tection claims, the Court noted, “confines courts, in breach of contract actions, to the parties’ bargains, with no enlargement or enhancement based on state laws or policies external to the agreement.” Id. at 233.
The core of the plaintiffs’ claim in this case is that the defendant employed a bait-and-switch tactic with respect to the price of the tickets, purporting to sell tickets at one price, but then extracting a higher price by the threat of denial of service. This claim indisputably “relates to” rates, as the Supreme Court has interpreted that phrase in the ADA. The plaintiffs’ argument to the contraryin essence, that they seek to redress the manner in which the defendant implemented its rates, rather than the rates themselvesdoes not withstand a reading of the Supreme Court decisions. Indeed, the Supreme Court expressly addressed and rejected essentially the same distinction in Morales v. Trans World Airlines, Inc., 504 U.S. at 385. Moreover, G.L.c. 93A is virtually indistinguishable from the state consumer protection statute under which the plaintiffs sought to proceed in American Airlines v. Wolens, 513 U.S. at 227. It follows that the plaintiffs’ claim under G.L.c. 93A, count I of their complaint, is preempted by the ADA, and must be dismissed.
The plaintiffs’ common law claims, as alleged in the complaint, stand on different footing. The contract claim, count II, falls directly within the holding of American Airlines v. Wolens, 513 U.S. at 228-29, that the ADA does not preempt such claims. See McLaughlin v. TWA Getaway Vacations, Inc., 979 F.Sup. 174, 176 (S.D.N.Y. 1997); Chukwu v. Board of Directors, Varig Airline, 880 F.Sup. 891, 895 (D.Mass. 1995); compare Smith v. Comair, Inc., 134 F. 3d 254, 258 (4th Cir. 1998) (contract claim pre-empted where subject to defenses based on federal law, so that claim could be adjudicated only "by reference to law and policies external to the parties’ bargain”).
American Airlines v. Wolens does not address any common law misrepresentation claim, as asserted in countTII of the plaintiffs’ complaint, but the Court’s reasoning provides no basis for distinguishing among common law claims that would merely enforce the “parties’ bargains, with no enlargement or enhancement based on state laws or policies external to the agreement.” Id. at 233. Under Massachusetts law, the measure of damages for misrepresentation, as for breach of contract, is the benefit of the bargain. See Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982). In that sense, the misrepresentation claim merely duplicates the contract claim, and adds nothing either to the remedy the plaintiffs may obtain or to the burden imposed on the defendant by the litigation. Accordingly, counts II and III are not subject to dismissal.
B. Private Right of Action
Count IV of the complaint alleges violation of Department of Transportation Regulations regarding air charter services, 14 C.F.R. §380 et seq. In particular, the plaintiffs allege that the defendant violated 14 C. F. R. §380.33(b) by increasing the price of the tickets less than ten days before departure; that it violated 14 C. F. R. §380.30(e) by failing to disclose the fuel surcharge in advertising and in the invoice for the plaintiffs’ tickets; and that it violated 14 C.F.R. §380.31(b) by failing to inform the plaintiffs that they had a right to receive an operator-participant contract before booking, that the contract would be mailed to them within 24 hours of payment, and that they must sign and return the contract before the date of travel.
The parties have identified only one decision addressing the question of whether a private right of action exists to enforce the provisions of these particular regulations. That decision is an unpublished opinion of the United States District Court for the District of Minnesota in Mahr v. R&R International, Inc., No. 98-CV-982 (April 2, 1999). In that case, the Court noted the absence of any explicit provision in the ADA granting a private right of action for enforcement of the statute and regulations promulgated under it. The Court proceeded to apply the four-factor test established in Cort v. Ash, 422 U.S. 66, 78 (1975), to determine whether the statute may give rise to an implied private right of action. Pursuant to that decision and the subsequent case of Thompson v. Thompson, 484 U.S. 174, 179 (1988), the Mahr Court focused its examination particularly on the question of Congressional intent. In this regard, the Court noted that the ADA provides expressly for enforcement by the Secretary of Transportation, by specified means including civil actions filed in federal court. See 49 U. S. C. §§46101, 46106. Based primarily on that observation, the Court concluded that the statute does not establish an implied private right of action, and ordered the action dismissed.
Last year, in Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001), the Supreme Court further emphasized the importance of examining statutory language to determinate the existence of an implied private right of action. The Court began with the fundamental proposition that “private rights of action to enforce federal law must be created by Congress.” Id. at 286. Thus, the Court went on, “[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy . . . Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.” Id. (citations omitted). “Language in a regulation,” the Court held, “may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.” Id. at 291.
The ADA is a complex statute with multiple parts, including many amendments enacted in a variety of *717 temporal contexts. Overall, the statute abolishes the previously existing system of regulation of aviation under the Federal Aviation Administration, replacing it with a primarily market driven system administered by the federal Department of Transportation. See Morales v. Trans World Airlines, Inc., 504 U.S. at 378. The parties have called to the Court’s attention five sections in particular, 49 U.S.C. §§40101, 40113, 41712, 46101, and 46106.
Section 40101(a) sets out a list of “matters” that the Secretary of Transportation “shall consider ... as being in the public interest and consistent with public convenience and necessity” in “carrying out” the provisions of the act. Among these matters are “(4) the availability of a variety of adequate, economic, efficient, and low-priced services without unreasonable discrimination or unfair and deceptive practices,” and “(9) preventing unfair, deceptive, predatory, or anti-competitive practices in air transportation.” Section 40113 authorizes the Secretary to “take action the Secretary . . . considers necessary to carry out this part, including conducting investigations, prescribing regulations, standards, and procedures, and issuing orders.”
Section 41712 elaborates on the Secretary’s power with respect to unfair or deceptive practices, as follows:
(a) On the initiative of the Secretary of Transportation or the complaint of an air carrier, foreign air carrier, or ticket agent, and if the Secretary considers it is in the public interest, the Secretary may investigate and decide whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation. If the Secretary, after notice and an opportunity for a hearing, finds that an air carrier, foreign air carrier, or ticket agent is engaged in an unfair or deceptive practice or unfair method of competition, the Secretary shall order the air carrier, foreign air carrier, or ticket agent to stop the practice or method.[3]
Sections 46101(a)(1) authorizes the secretary to receive and investigate complaints of violation. Under that section, “a person may file a complaint in writing with the Secretary . . . about a person violating this part... or a requirement prescribed under this part,” and “the Secretary shall investigate the complaint if a reasonable ground appears to the Secretary... for the investigation.” Section 46106 provides that ”[t]he Secretary of Transportation . . . may bring a civil action against a person in a district court of the United States to enforce this part or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part.” The regulations governing charters include an enforcement provision, 14 C.F.R. §380.4, referring to the same enforcement mechanisms and potential sanctions authorized in these statutory provisions.[4]
These statutory provisions, considered in the manner directed by the Supreme Court in Alexander v. Sandoval, 532 U.S. at 286-87, plainly do not create a private right of action. Nothing in these statutory provisions confers rights on any particular category of person; still less do these provisions express or imply any intention to grant a remedy to any such person. Rather, on their face the statutory provisions authorize and direct the Secretary of Transportation to act by specified means in furtherance of specified goals, in such a manner as to further the interests of the general public. See Nader v. Allegheny Airlines, Inc., 426 U.S. 290 (1976), quoting American Airlines v. North American Airlines, Inc., 351 U.S. 79, 83 (1956) (enforcement power of Civil Aeronautics Board under predecessor provision “is expressly premised on a finding that the ‘public interest’ is involved. The Board ‘may not employ its powers to vindicate private rights’ ”). Private enforcement would not further the apparent intent of Congress, but rather would undermine the statutory goal of coordinated administrative enforcement for the benefit of the public as a whole. See Musson Theatrical, Inc., v. Federal Express Corporation, 89 F.3d 1244, 1252 (6th Cir. 1996) (“Every court faced with the question of whether a consumer protection provision of the ADA allows the implication of a private right of action against an airline has answered the question in the negative”); Statland v. American Airlines, Inc., 998 F.2d 539, 541 (1993); Wolf v. Trans World Airlines, Inc., 544 F.2d 134, 137-38 (3d Cir. 1976); Polansky v. Trans World Airlines, 523 F.2d 332, 335-38 (1975); McElderry v. Cathay Pacific Airways, Ltd., 678 F.Sup. 1071 (S.D.N.Y. 1988). See also Montauk-Caribbean Airways, Inc., v. Hope, 784 F.2d 91, 97-98 (1986) (no private right of action under statutory provision regarding use of federally funded airport facilities); In re Mexico City Air Crash, 708 F.2d 400, 409 (9th Cir. 1983) (no private right of action under safety provisions of Federal Aviation Act); Deifenthal v. Civil Aeronautics Board, 681 F.2d 1039, 1048-51 (5th Cir. 1982) (applying Cort v. Ash factors, holding no private right of action under section of Federal Aviation Act requiring maintenance of level of service); Schmeling v. Nordam, 97 F.3d 1336, 1344 (10th Cir. 1996) (no private right of action under FAA regulations regarding drug testing of airline employees); Drake v. Delta Airlines, Inc., 923 F.Sup. 387, 391-93 (E. D. N. Y. 1996) (same); Salomon v. Roche Compuchem laboratories, Inc., 909 F.Sup. 126, 128 (E.D.N.Y. 1995) (same).
The plaintiffs rely on Interface Group v. Massachusetts Port Authority, 816 F.2d 9, 16 (1st Cir. 1987). The Court in that case considered whether an air charter company could assert a private cause of action against Massport based on three statutory provisions regarding the use of federally funded airport facilities. The *718 Court applied the Cort v. Ash factors to each of the three provisions, and concluded that an implied private right of action existed only as to one of the three, 49 U. S. C. App. §1513, known as the “Anti-Head Tax Act.” In reaching that conclusion, the Court noted particularly the absence from that statutory provision of any specified mechanism for administrative enforcement, or indeed any reference to the Secretary of Transportation, indicating, in the Court’s view, “that Congress did not consider it especially important to employ administrative expertise in the statute’s enforcement.” Id. at 16.
As noted supra, the Supreme Court’s most recent decision in this area has somewhat shifted, or at least clarified, the emphasis in the analysis. On that basis, the Seventh Circuit and Tenth Circuit have both reached the opposite conclusion from the First Circuit as to the Anti-Head Tax Act. See Miller Aviation v. Milwaukee County Board of Supervisors, 273 F. 3d 722, 731 (7th Cir. 2001) (acknowledging contrary precedent in Interface Group, but rejecting claim in light of Alexander v. Sandoval); Southwest Air Ambulance v. City of Las Cruxes, 268 F. 3d 1162 (10th Cir. 2001) (same). Moreover, here, as discussed supra, the pertinent statutory sections expressly provide for administrative enforcement. Thus, the analysis applied in Inteiface Group, even if still valid, would not assist the plaintiffs. As no private right of action exists to enforce the regulations invoked, count IV of the plaintiffs’ complaint, alleging violation of those regulations, fails to state a claim and must be dismissed.
II. The Motion for Summary Judgment
As an alternative to dismissal on solely legal grounds, the defendant seeks summary judgment based on facts it contends are undisputed. The Court will consider that aspect of the motion with respect to the plaintiffs’ common law claims, which are not subject to dismissal.
In support of summary judgment, the defendant provides affidavits of its Product Manager, with exhibits, and of two agents of the plaintiffs’ travel agency, Sheila Carita, who booked the flights, and Bonnie Dunn, who gave Fenn the tickets. These affidavits present the following factual assertions. The air carrier for the plaintiffs’ flights was American Trans Air (“ATA”), an entity independent of the defendant, with which it entered into an Aircraft Charter Agreement. Under that agreement, the price to be charged the defendant for the charter was “subject to any increase in ATA’s average system price of fuel.” Upon receiving notice of such an increase, the defendant could “either accept the increase or cancel the trip.” On November 24, 1999, ATA notified the defendant of an increase for the plaintiffs’ flight, in an amount equivalent to $18.58 per passenger. The defendant rounded that figure up to twenty dollars per passenger to cover its administrative costs in connection with processing the increase.
The defendant, according to its affidavit, “mentioned the possibility of a fuel surcharge in its print advertisements in the fall of 1999.” Copies of newspaper advertisements, appended as exhibits to the affidavit, state that “(l)isted prices may be increased due to costs of aviation fuel and/or administrative cost increases.” The advertisements refer to the Tour Participation Contract in the defendant’s brochure, and provide a telephone number to call to request a brochure. The 1999-2000 brochure included the following phrase, at the bottom of twenty-five of its twenty-nine pages, including each page relating to trips to Aruba: “Listed prices may be increased due to costs of aviation fuel and/or administrative cost increases.” The same brochure contained the full text of the Tour Participant Contract, including the following: “participants may be required to pay increased costs (e.g. increaced [sic] fuel costs) for the tour without any right of cancellation or refund.” The defendant also included in purchasers’ travel documents a flier stating that “a $20.00 — $50.00 per person price increase, which covers the fuel increase and associated administrative costs, will apply to all passengers traveling. At the airport, on the day of departure, you will be advised of the exact amount to be collected . . . All passengers will be required to pay the above price increase at the airport when checking in for your departure.”
The defendant accepts reservations only through travel agents, and does not have direct contact with ticket purchasers at the time of the purchase; it relies on travel agents to alert passengers to the existence and provisions of the Tour Participant Contract. The defendant’s computer record regarding the plaintiffs’ purchase, dated November 9, 1999, includes the following notation: “RECAPD W/AGT SHEILA ADV OF TPC AND FUEL INCREASE.” According to the defendant’s affidavit, ”[t]his notation means that when the Fenns’ travel agent . . . called to book the Fenns’ trip on November 9, the TNT reservations agent, per TNT’s usual practice, repeated to Sheila the fact that TNT uses a Tour Participant contract (TPC) and reserves the right to impose a charge for any increase in the costs of aviation fuel.” The defendant’s practice, according to its affidavit, is to send travel documents, including the flier, to the purchaser’s travel agent “some three weeks before the departure date.” The defendant’s records indicate that in this case it sent the documents to the plaintiffs’ travel agent on November 23, 1999, eighteen days before their departure date.
The affidavit of the plaintiffs’ travel agent, Sheila Carita, adds the following. She had copies of the defendant’s brochure, including the Tour Participant Contract, which she would have supplied to Fenn if he had requested. Her practice was to discuss the Tour Participant Contract with her clients when booking trips. The defendant’s practice, when imposing a fuel charge, was to include a flier with the travel docu *719 ments. The imposition of such charges is “not uncommon” among charter tour operators as well as other suppliers of travel services. Ms. Carita’s colleague at the travel agency, Bonnie Dunn, states in her affidavit that when the plaintiffs’ travel documents arrived, she notified Fenn, and he picked them up from her. Her practice was to review the travel documents with the client. Such documents, as provided by the defendant at the time, would include “a brightly colored flier . . . stating that there would be this additional charge . . . [and] that TNT would collect the fuel charge at the gate at the airport ...”
The plaintiffs’ response consists of identical affidavits of the two plaintiffs and an affidavit of their attorney pursuant to Mass.R.Civ.P. 56(f). The plaintiffs’ affidavits recite that “I hereby verify and confirm, upon my direct knowledge or my best information and belief, all the factual allegations contained in the Complaint and Plaintiffs’ Memorandum of Law in Support of their Opposition to Defendant’s Motion to Dismiss.” Their attorney’s affidavit, to be discussed in greater detail infra, asserts their inability to respond to the motion without discovery.[5]
This Court grants summary judgment where there are no genuine issues of material fact and the record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of establishing that there is no genuine dispute on every material issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a genuine dispute of material fact for trial either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue by either of these methods, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The opposing party may not rest on the allegations of the pleadings, nor may it rely on “bare assertions and conclusions regarding [its own] understandings, beliefs, and assumptions.” Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989). Mere contradictions of factual allegations, without evidentiary support, are insufficient to raise questions of material fact sufficient to defeat a summary judgment motion. See Madsen v. Erwin, 395 Mass. 715, 721 (1985), quoting Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972) (noting that conclusory statements, denials, and allegations are insufficient to raise material issues of fact). The opposing party’s obligation, rather, is to demonstrate the existence of admissible evidence sufficient to meet its burden of proof on the issues raised by the motion.
In deciding motions for summary judgment, the Court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. The Court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility or find facts. See Dawes, 369 Mass. at 553; Mass.R.Civ.P. 56(c); Colley v. Benson, Young & Downs Insurance Agency, Inc., 42 Mass.App.Ct. 527, 528; see also Kelley v. Rossi, 395 Mass. 659, 663 (1985).
Under Mass.R.Civ.P. 56(f), a court will defer consideration of the motion “if the party opposing a summary judgment motion shows that it cannot, without further discovery, ‘present by affidavit facts essential to justify [its] opposition.’ ” Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 307 (1991). A party relying on this rule must show that the planned discovery will address the issue raised in the summary judgment motion. “One common reason for the denial of a continuance in this context is the irrelevance of further discovery to the issue being adjudicated in summary judgment.” Id. at 308.
The counts remaining for consideration of summary judgment are common law claims of breach of contract and misrepresentation. To prove a breach of contract, the plaintiffs must establish the existence and terms of the contract, and the breach of a material term. See generally, Situation Management Systems, Inc. v. Malouf, 430 Mass. 875, 878-79 (2000). In this context, to prevail on this claim the plaintiffs must prove that the defendant agreed to transport them for the initial ticket price, without any additional charge, and then refused to do so. To prove misrepresentation, the plaintiffs must show that the defendant made a false statement of material fact to induce the plaintiffs’ reliance, and that the plaintiffs reasonably relied on such statement, to their detriment. See Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991). In this context, as with the contract claim, the plaintiffs must show that the defendant falsely stated that it would transport them for the initial ticket price, without any additional charge, and that they reasonably relied on that statement to their detriment.
The defendant’s affidavits, if true, establish that the plaintiffs cannot make the necessary showing, since all of the materials that might fairly be characterized as a contract, offer to contract, or statement by the defendant as to the ticket price, included notice of the potential fuel surcharge. In the face of such notice, the plaintiffs cannot prove the existence of a contract to transport them without such a charge, the defendant’s *720 making of any statement that it would do so, or their own reasonable reliance on any such statement. The question, then, is whether the plaintiffs’ response is sufficient to warrant allowing them an opportunity to take discovery in an effort to identify evidence that might establish the existence of a genuine factual dispute on this issue. The Court concludes that it is not.
The plaintiffs’ own affidavits add nothing to the analysis, since they contain no specific facts asserted as of their own personal knowledge. See Madsen v. Erwin, 395 Mass. at 721; Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. at 728. The affidavit of their counsel, although setting forth at some length the discovery the plaintiffs seek, fails to establish any reasonable basis to believe that such discovery will elicit any evidence to support these claims.
Counsel refers to discovery relating to “TNT’s practice, procedure, and history of charging a per person price increase for fuel and associated administrative cost,” and its “calculation of the surcharge.” Counsel refers also to requests for documents reflecting communications between defendant, America Trans Air, and its fuel supplier, the contract between TNT and ATA, and documents reflecting “whether or not TNT has previously charged its customers a fuel charge in the past and if TNT has ever provided its customers with a rebate or partial refund when the cost of airline fuel decreased.” In addition, counsel asserts a need for discovery “to determine when TNT’s policy of charging an additional fuel fee went into effect since it is relevant to the question of how many customers were charged an additional fee, how the passengers were given notice; how TNT decided on the amount of the fuel surcharge . . .,” and similar matters. Discovery in these areas might well bear on the c. 93A claim and/or on the claim of regulatory violations, but those claims must be dismissed for the reasons already discussed. The discovery cited might also bear on the issues relating to propriety of class certification. But the plaintiffs cannot be proper class representatives unless they themselves have viable claims. The discovery cited will not assist in that determination.
The affidavit of the plaintiffs’ counsel does refer to discovery in areas that may relate to the common law claims, particularly “information relevant to Peter Fenn’s purchase of airline tickets from TNT,” “documents revealing customer notification of the fuel surcharge by TNT,” “information relating to TNT’s Tour participation Contract,” and “whether TNT misrepresented to plaintiffs . . . the total cost of the flight and provided plaintiffs with adequate and timely notice of the possibility and actual amount of the surcharge.” These references, however, do not meet the requirement of rule 56(f), in that they do not show that the plaintiffs “cannot for reasons stated present by affidavit facts essential to justify [their] opposition.” The facts that would be essential to the plaintiffs’ common law claims are matters that would, by their nature, be within the plaintiffs’ own personal knowledge, and therefore subject to being set forth in their own affidavits. If the plaintiffs had purchased the tickets in reliance on some statement or promise made by the defendant as to the total price, they would be in a position to identify that statement or promise, with precision, and to swear to its having been made and to their reliance on it. Their failure to offer any such affidavit establishes their inability to meet their burden of proof on the elements of these claims. See Commonwealth v. Fall River Motor Sales, Inc., 409 Mass, at 309; see also Slaven v. City of Salem, 386 Mass. 885, 889 (1982).
The plaintiffs’ failure in this regard reveals that the essence of their claim is not, in fact, that the defendant breached a contractual duty or committed a common law misrepresentation. The essence of their claim, rather, is that the contract itself, and the manner in which the defendant implements it, are unfair and deceptive. That is precisely the type of claim that is preempted by federal law. See Musson Theatrical, Inc. v. Federal Express Corp. 89 F.3d at 1251 (misrepresentation claim that essentially charged advertising fraud preempted); The Boon Insurance Agency, Inc., v. American Airlines, Inc., 17 S.W.3d 52, 58 (Tex.Civ.App. 2000) (contract claim preempted where plaintiff “does not look to enforce the contract as written but instead seeks to modify the terms of the contract itself by relying on state law”); Leonard v. Northwest Airlines, Inc., 605 N.W.2d 425, 431 (Minn.Ct.App. 2000) (“Because the claims are unrelated to the contract.. . but instead seek to enforce state imposed obligations against contract penalties, they are preempted”). Accordingly, the defendant is entitled to judgment as a matter of law.
CONCLUSION AND ORDER
For the reasons stated, the Defendant’s Motion to Dismiss Or, In the Alternative, for Summary Judgment is ALLOWED.

 The complaint does not specify a time period.

 The Court endorsed the motion “Allowed only until the Defendant’s Motion to Dismiss on the legal issue of preemption by the FAA is heard and decided.”

 An example of the Secretary’s action pursuant to the power granted in this provision is the consent order issued in the case of In re Jetstream Corporation, 1992 DOT Av. LEXIS 146 (February 18, 1992).

 Section §380.4 provides:
In the case of any violation of the provisions of the Statute or of this part, or any other rule, regulations, or order issued under the statute, the violator may be subject to a proceeding pursuant to the Statute before the Department or a U.S. district court, as the case may be, to compel compliance therewith; to civil penalties pursuant to the provisions of the Statute, or to criminal penalties pursuant to the provisions of the Statute, or other lawful sanctions.

 The plaintiffs have not filed a response to the defendant’s statement of undisputed material facts pursuant to Superior Court Rule 9(a)(b)(5), presumably relying on their attorney’s affidavit as ground for postponement of consideration of this aspect of the motion.